436 P.2d 915

**Jose ROSELL and Joe Xavier Rosell, dba Arizona Fence Company, Appellants,**

**v.**

**SILVER CREST ENTERPRISES, a partnership, Appellee.**

**No. I CA–CIV 621.**

Court of Appeals of Arizona.

Feb. 5, 1968.

Jerman & Jerman, by Stanley M. Jerman, Phoenix, for appellants.

Westover, Keddie & Choules, by Tom C. Cole, Yuma, for appellee.

STEVENS, Judge.

This appeal involves a suit brought by the appellee, Silver Crest Enterprises, against the appellants, Phoenix fence contractors who had done business in Yuma, to recover the purchase price of a fence built at appellee's drive-in theatre in Yuma, Arizona.

In August of 1963, appellant proposed and contracted to build a chainlink fence for the

appellee. The fence was to be used by the appellee for the purpose of screening out annoying lights from the screen of the drive-in theatre.

The local manager for appellant in Yuma, at the time the contract was entered into, was one Nestor Jiminez. He had been associated in the fence building business with the appellant since 1961. The appellee, prior to entering into a contract, explained in detail to Jiminez the particular purpose of the fence and asked him if it would be possible to screen out the light with a fence. After the appellee had advised Jiminez, as well as Rosell, a partner in the appellant fence company, of the purpose for which the fence was intended, the appellee requested that Jiminez examine the entire area where the drive-in customer's cars were to be parked during the threatre program and then to construct a fence that would adequately screen out the annoying and interfering lights. The design, height and construction of the fence was left for the determination of Jiminez and the appellant fence company.

The appellants constructed a 30 ft. high chainlink fence. It was to act as a light screen by the insertion of aluminum slats in the chainlink material. The contract entered into for the construction of the fence called for the payment of $3,345 on completion of the work. The contract further provided: "All work will be performed in a workmanlike manner and in accordance with standard practice". The materials to be used in the construction of the fence were purchased from the Hurricane Fence Company by appellants. The Hurricane Fence Company supplied a customer's guarantee which provided: "The company will GUARANTEE to furnish materials, specifications and erection in accordance to our standard practice, which states on written proposal given at date of purchase. We will further guarantee after erection, to make any reasonable adjustment to customer's satisfaction".

During the early part of October, 1963, the fence was completed. At this time, the appellee paid the appellants the agreed upon price for the construction. Within two or three days after completion of construction the fence began to lean. During the time that the fence was falling, the appellee complained to agents of the appellants and requested that they remedy the situation. The appellants installed guy-wires in an effort to strengthen the fence. The installation of the guy-wires did not sufficiently remedy the situation and approximately one week after the completion of the construction, the fence fell.

The appellee then brought suit to recover the contract price of the fence and for damages. The case was tried to the court and a judgment was rendered in favor of the appellee for the contract price plus costs. The judgment was appealed to this Court.

The appellants contend that they cannot be held liable to the appellee because the contract for the construction of the fence only provided that all work would be performed in a workmanlike manner in accordance with standard practice and did not provide that the fence would remain standing after construction and serve the purpose for which it was intended. With this contention we do not agree. When a contractor agrees to build a structure to be used for a particular purpose, there is an implied agreement on the part of the contractor that the structure, when completed, will serve the purpose for which it was intended. See 17A C.J.S. Contracts § 494(2) c. (a), pg. 715. Furthermore, as was pointed out above, the appellants supplied all plans and specifications for the construction of the fence. When a contractor furnishes plans for construction he thereby guarantees their sufficiency. McConnell v. Gordon Construction Company, 105 Wash. 659, 178 P. 823 (1919). Where the contractor prepares the plans and specifications he cannot escape responsibility for defects in the work by contending that the defects were in the specifications and not in the work since he is responsible for both. Barraque v. Neff, 202 La. 360, 11 So.2d 697 (1942).

The record reveals that at the time of the completion of the construction, the fence was sufficient for the purpose for which it had been constructed. But, the fence began to fall very shortly after the completion of the construction and had completely collapsed within a week. We cannot say that the fence satisfied the purpose for which it was constructed because the structure must be sufficient at the time of completion and for a reasonable period of time thereafter. See Edison General Electric Company v. Canadian Pacific Nav. Company, 8 Wash. 370, 36 P. 260, 24 L.R.A. 315 (1894).

An implied promise is as much a part of a contract as a written one and is subject to the same penalties for breach. See Zancanaro v. Cross, 85 Ariz. 394, 339 P.2d 746 (1959). We hold that the judgment in favor of the appellee may be upheld on the theory that the appellant breached its implied promise that the structure, when completed, would be serviceable for the purpose for which it was intended.

The appellants also contend that the collapse of the fence was caused by an act of God for which the appellants cannot be held liable. The record does not support this contention. There is evidence in the record that there was a strong wind in the Yuma area on the day that the fence finally collapsed. However, the record reveals that the fence began to fall almost immediately after construction was completed and was doomed to failure even in the absence of a high wind on the day of the final collapse. Under this set of facts, we cannot hold that the collapse was caused by an act of God.

During our consideration of the current appeal, the Judges of Division Two of the Court of Appeals, pursuant to A.R.S. § 12–120, subsec. E, had under consideration Cause No. 1 CA-CIV 440 entitled Arizona Fence Contractors Association, Inc. v. City of Phoenix Advisory and Appeals Board, 7 Ariz.App. 129, 436 P.2d 641. The opinion in the latter case was filed on 25 January 1968. We deem the opinion in the Arizona Fence Contractors Association case to be consistent with this opinion.

The record, and the oral argument, reflect certain unhappiness between counsel. These matters were presented to the trial judge. By his orders we conclude that he must have found that there was no knowing wrong doing and that there was no prejudice to the parties to the litigation. From our examination of the record and the presentation of the oral argument, we have reached the conclusion which, in our opinion, must have been reached by the trial judge.

Judgment affirmed.

FRANCIS J. DONOFRIO, Acting Chief Judge, and C. LAWRENCE HUERTA, Judge of the Superior Court, concur.

NOTE: Chief Judge JAMES DUKE CAMERON having requested that he be relieved from the consideration of this matter, C. LAWRENCE HUERTA, Judge of the Superior Court, was called to sit in his stead and participate in the determination of this cause.