369 So.2d 971 (1979)
STRATHMORE RIVERSIDE VILLAS CONDOMINIUM ASSOCIATION, INC., Appellant,
v.
PAVER DEVELOPMENT CORPORATION et al., Appellees.
No. 78-140.
District Court of Appeal of Florida, Second District.
March 2, 1979.
Rehearing Denied April 18, 1979.
*972 Benjamin P. Reese, II of Stinnett & Stinnett, Sarasota, for appellant.
Robert P. Rosin of Rosin, Abel, Band, Rosin & Brown, Chartered, Sarasota, for appellees.
GRIMES, Chief Judge.
This is an interlocutory appeal and a cross-appeal[1] from an order entered upon motion to dismiss several counts of a complaint.
The appellant is a nonprofit corporation which operates a condominium known as Strathmore Riverside Villas. The appellant, which is controlled by the unit owners of the condominium, filed a suit against the appellees, the developer of the condominium and certain individuals associated with the developer.
The fifth amended complaint contained six counts. The first four counts sought damages from the developer for the reduction in value of the condominium units and the common elements caused by the breach of implied warranties. Count I, brought on behalf of those appellant's members who had purchased their units directly from the developer, alleged a breach of implied warranties of compliance with plans and specifications approved by the building and zoning department of the City of Sarasota and of compliance with applicable building codes. Count II was predicated upon the same theory but was brought on behalf of those members who were not in privity with the developer because they had acquired their condominium units from previous purchasers. Count III was prosecuted on behalf of original purchasers seeking damages caused by the breach of implied warranties of fitness and merchantability. Count IV was similar to Count III except that it sought recovery on behalf of the unit owners who were not in privity with the developer. Upon the developer's motion, the court dismissed Counts II and IV.
In Gable v. Silver, 264 So.2d 418 (Fla. 1972), the Florida Supreme Court adopted the decision of the Fourth District Court of Appeal which had held that implied warranties of fitness and merchantability extended from builder-sellers to the purchasers of new condominium homes.[2] In the course of its opinion our sister court had said:
We ponder, but do not decide, what result would occur if more remote purchasers were involved.
Gable v. Silver, 258 So.2d 11, 18 (Fla. 4th DCA 1972). By virtue of the order entered below, we must now respond to that unanswered query.
In recent years a number of other jurisdictions have held that implied warranties of fitness and merchantability apply to the purchase of new homes. See Annot., 25 A.L.R.3d 383 (1969). Only Indiana, however, has extended this doctrine to the purchase of a used home and then only in the case of a latent defect. Barnes v. MacBrown and Company, Inc., 264 Ind. 227, 342 N.E.2d 619 (1976). At least two other states have refused to apply the doctrine to remote purchasers. Oliver v. City Builders, Inc., 303 So.2d 466 (Miss. 1974); H.B. Bolas Enterprises, Inc. v. Zarlengo, 156 Colo. 530, 400 P.2d 447 (1965). See also Graham v. United States, 441 F. Supp. 741 (M.D.Tex. 1977), in which the federal district court ruled that Texas law does not recognize implied warranties in the sale of a used home.
In Oliver v. City Builders, Inc., supra, the purchaser urged the court to depart from the previously existing rules relating to real estate transactions and to substitute the principle of strict liability in tort.[3] In rejecting *973 this contention, the Mississippi court pointed out why privity continues to be a viable concept in the sale of homes:
It should be noted that, while the present litigation involves a dwelling, a rule applying the doctrine of strict liability in tort with respect to a dwelling necessarily would, in reason, require its application, with equal force, to structures of every kind standing upon, and which are part of, real estate. Thus, in case of a transfer of a tract of land by a vendor, however remote from the builder such vendor might be, the purchaser, however remote in title from the original owner he might be, would be able to require the builder of any structure standing upon it to respond in damages for any deficiency therein, whether the structure should be a dwelling, outhouse, barn, office or any other type of building. Material and workmanship which may go into a structure are of infinite variety. An original purchaser of land on which a building is situated, for reasons of economy or for any other reason, may be satisfied, and may accept it from the builder in any condition in which it may be. He may waive defects, and he may do so by his actions or by writing or orally or by the mutual assent of the parties. Circumstances may be such between the original purchaser and the builder, that the former may be estopped to complain of the quality, type, class or kind of construction or material, or as to the strength, durability and appearance of the structure.
It would be strange indeed if, when the original purchaser conveyed the property to another, that his vendee could resort to the builder for damages for deficiencies in workmanship or materials which the original purchaser from the builder had accepted.
Many unforeseen ramifications could arise should we opt for a rule holding builders or developers liable to remote purchasers for the diminished value of a home allegedly caused by defects in construction. If this step is to be taken, then we believe it should be accomplished by the legislature rather than by this court. We are unimpressed by appellant's argument that the uniqueness of condominium living requires a different rule than with respect to ordinary houses. Thus, we hold that the court correctly struck Counts II and IV.
We now turn to the cross-appeal. Count V pleaded a lease between certain individuals who were the developer's alter ego, as lessors, and appellant, as lessee, which contained a clause making appellant responsible for all property taxes on the condominium's recreation and common facilities, the subject of the lease agreement. Appellant then alleged that the county tax assessor increased the 1974 valuation of the lease property by $456,500 and mailed the appropriate notice to the individuals or to the developer, but that they failed either to notify appellant or to appeal the increase in valuation. Appellant further stated in Count V that it successfully appealed the 1975 tax appraisal, thereby saving $4,200 in property taxes. Appellant then prayed for an award of $4,200 to cover the excess tax it had paid in 1974.
We believe the court properly denied appellees' motion to dismiss Count V. Although appellees refer to the principle that property owners are on notice of the amount of their taxes, this principle is not determinative. Count V sufficiently sets forth a duty on the part of appellees which they allegedly failed to perform. The proof of damages causally related to their breach would be a matter to be determined at trial.
By Count VI appellant sought to set aside the lease as unconscionable. The appellees moved to dismiss this count because it alleged only eight of the nine elements of presumptive unconscionability set forth in Section 718.122(1), Florida Statutes (1977). Appellees overlook subsection (2) of the same statute which states that failure of a lease to contain all of the enumerated elements *974 shall not preclude a determination of unconscionability. The court was unquestionably correct in declining to strike this count.
AFFIRMED.
BOARDMAN and SCHEB, JJ., concur.
NOTES
[1] This interlocutory appeal was taken pursuant to Fla.R.App.P. 4.2 before the effective date of the new appellate rules.
[2] More recently, implied warranties of fitness and merchantability have been held to include an implied warranty to immediate purchasers that their condominium units would be built according to specifications contained in plans approved by the appropriate governmental authority. David v. B. & J. Holding Corp., 349 So.2d 676 (Fla. 3d DCA 1977).
[3] A similar argument could be made in our case because of our supreme court's adoption of strict liability of product manufacturers to ultimate consumers. West v. Caterpillar Tractor Co., Inc., 336 So.2d 80 (Fla. 1976). However, the strict liability principle of West was announced with respect to physical harm caused by the defective product.