406 So.2d 515 (1981)
DREXEL PROPERTIES, INC., Appellant,
v.
BAY COLONY CLUB CONDOMINIUM, INC., et al., Appellees.
No. 79-2126.
District Court of Appeal of Florida, Fourth District.
November 4, 1981.
Rehearing Denied December 18, 1981.
*516 Eric B. Meyers and Gregory P. Borgognoni of Shutts & Bowen, Miami, and Brian C. Deuschle of Spear, Deuschle & Curran, Fort Lauderdale, for appellant.
Alan S. Becker and Robert J. Manne of Becker, Poliakoff & Streitfeld, P.A., Fort Lauderdale, for appellee.
Barry A. Mandelkorn of Ruden, Barnett, McClosky, Schuster & Russell, Fort Lauderdale, for amicus curiae, Oriole Homes Corp.
William G. Crawford, Jr., Fort Lauderdale, for amicus curiae, American Institute of Architects/Broward Chapter.
David St. John of Powell, Tennyson & St. John, P.A., West Palm Beach, for amici curiae, Florida Consumers' Federation and Condominium Co-op Executive Council.
RIVKIND, LEONARD, Associate Judge.
A non-jury trial of this class action for construction defects resulted in a final judgment in the amount of $917,356.00. The action was commenced by the condominium association and representative unit owners, appellees herein, against the developer of the Bay Colony Club Condominium, appellant herein. The amended complaint, upon which the case was tried, claimed that the developer was guilty of breach of implied warranty and of negligence in allegedly failing to construct the condominium in a manner required by the South Florida Building Code (Broward Ed. 1972), plans and specifications, and good design, engineering and construction practice. The items of damages awarded which are disputed on appeal involve "decorative aluminum fencing" ($145,000.00), "ceiling roof assembly" ($292,000.00), and "aluminum awning windows" ($288,500.00).

The Decorative Aluminum Fencing
The construction plans filed with the applicable governmental authority, and upon which a building permit was issued, detailed the construction of decorative aluminum fencing around the air conditioning units which are located on the top of the roof of each building. It was not installed and the construction plans were not amended. Its purpose was to perform an aesthetic rather than utilitarian function. No physical damage was claimed. The trial judge imposed liability upon the developer for "loss of bargain" because of its failure to file an amended plan with the governmental authority.[1]

The Ceiling Roof Assembly
The South Florida Building Code requires that ceilings be of not less than one-hour fire resistive construction.[2] On conflicting testimony the trial judge found the ceiling roof assembly was not capable of a one-hour fire resistive rating. We cannot disturb this finding since it is supported by substantial competent evidence.

*517 The Aluminum Awning Windows

The South Florida Building Code requires that a bedroom window be capable of a five square foot opening without the use of tools.[3] On conflicting testimony the trial judge found that the bedroom aluminum awning windows could not be opened to provide a clear opening of five square feet without the use of tools. We cannot disturb this finding since it is supported by substantial competent evidence.
In its final judgment the trial court made the following conclusions of law.
1. With regard to the Count of negligence, the Court finds that:
(a) Plaintiffs have a right to maintain this action on behalf of both original and subsequent purchasers...
2. With regard to the Count of breach of implied warranties, the court finds:
(a) That original purchasers and subsequent purchasers of condominium apartments may recover for the entire damages to items which are common elements.
(b) That original purchasers who still own their apartments are entitled to recover for the full amount of damage to the common elements of the condominium resulting from Defendant's breach of implied warranties of fitness and merchantability notwithstanding that they own those common elements as tenants in common with subsequent purchasers of the condominium apartments...
The appellant has raised a number of points on appeal.[4] We believe only three merit consideration. Appellant states these points as follows:
POINT I
Because the negligence alleged in the complaint did not result in physical harm to plaintiffs or their property, the trial court erred by allowing recovery on the basis that violations of the building code and defects in the buildings at Bay Colony were negligence.
POINT II
The trial court erred by creating an implied warranty of strict compliance with the building code.
A. The implied warranty extended to original purchasers of buildings in Florida requires the building to be reasonably fit for use as a residence.
B. The alleged building code violations and defects in the instant case were not found to have affected the fitness for use as a residence of any condominium unit at Bay Colony.
POINT III
Even if Drexel had been negligent or had breached an implied warranty the trial court erred by awarding damages to subsequent purchasers and by finding that plaintiffs could recover the full amount of damages to common elements.

Stare Decisis
In the beginning, Gable v. Silver, 258 So.2d 11 (Fla. 4th DCA 1972), adopted and approved, 264 So.2d 418 (Fla. 1972), extended an implied warranty of fitness and merchantability to the purchase of new condominiums from builders. That case involved a malfunctioning air conditioning system under an expired express warranty. The Gable opinion reached no decision as to subsequent purchasers but observed:

*518 We recognize that liability must have an end but question the creation of any artificial limits of either time or remoteness to the original purchaser.
Page 18.
See, also, Forte Towers South, Inc. v. Hill York Sales Corp., 312 So.2d 512 (Fla. 3d DCA 1975).
Wittington Condominium Apartments, Inc. v. Braemar Corporation, 313 So.2d 463 (Fla. 4th DCA 1975), was a class action for negligent construction and breach of contract. In a footnote[5] the court stated that implied warranty extends to "the purchaser of a new condominium."
In another class action, Imperial Towers v. Brown, 338 So.2d 1081 (Fla. 4th DCA 1976), the court said that difference as to unit owners may permit subclasses to be designated for the purpose of determining damages.
In David v. B & J Holding Corporation, 349 So.2d 676 (Fla. 3d DCA 1977), plaintiffs brought suit for damages for developer's failure to construct according to plans as filed with the governmental authority. The complaint concerned soundproofing and insulation in party walls. The developer failed to file an amendment to the plans, albeit it reserved the right in the sales contract to make changes.
The court said:
... we conclude that defendant, developer-builder impliedly warranted to the plaintiff condominium purchasers that their unit would be constructed in accordance with the specifications contained in the building plans filed with and approved by the appropriate governmental authority ...
... therefore, having departed from those specifications, is liable to plaintiffs for breach of implied warranties of fitness and merchantability.
Page 678.
In Putnam v. Roudebush, 352 So.2d 908 (Fla. 2d DCA 1977), the court held that purchasers could not recover from developer on theory of breach of implied warranty for a noisy air conditioner since the test was "whether the premises met ordinary, normal standards reasonably to be expected of living quarters of comparable kind and qualities."
B & J Holding Corp. v. Weiss, 353 So.2d 141 (Fla. 3d DCA 1977), was a suit by a condominium association and unit owners against the developer for breach of contract and implied warranty. The defects alleged were no sound boards in party walls, no moisture proofing in card room wall, incorrect voltage system, utilization of 3 HP rather than 5 HP water pumps, failure to house hot water heaters on roof and use of clear plate glass rather than tinted glass. The court affirmed the final judgment which awarded damages to correct the defects or complete the omissions.
In Gory Associated Industries, Inc. v. Jupiter Roofing & Sheet Metal, Inc., 358 So.2d 93 (Fla. 4th DCA 1978), the court allowed a homeowner the cost of replacement of a defective roof against a tile manufacturer. Judge Letts, speaking for the court, said:
We would comment that we are sympathetic to a replacement of defective work. If a proud householder, who plans to live out his days in the home of his dreams, orders a new roof of red barrel tile and the roofer instead installs a purple one, money damages for the reduced value of his house may not be enough to affect the strident offense to aesthetic sensibilities, continuing over the life of the roof.
Page 95.
Simmons v. Owens, 363 So.2d 142 (Fla. 1st DCA 1978), involved water rot and termite infestation due to the negligent construction of a house by the defendant  contractor. The defects were latent and resulted from non-compliance with the building code. The plaintiff purchased the house from the first buyer. The court held there was no implied warranty because plaintiff was a remote purchaser. However, the court held that the contractor could be sued on the theory of negligence. See, also, Slavin v. Kay, 108 So.2d 462 (Fla. 1958) and *519 Geer v. Bennett, 237 So.2d 311 (Fla. 4th DCA 1970).[6]
Strathmore Riverside v. Paver Development Corp., 369 So.2d 971 (Fla. 2d DCA 1979), cert. denied, 379 So.2d 210 (Fla. 1979), recognized that a cause of action exists for breach of implied warranty of compliance with plans and specifications approved by governmental body, of compliance with applicable building codes, and of fitness and merchantability, as to original purchasers in privity with developer. The court specifically rejected the invitation to extend the implied warranty to remote or subsequent purchasers. In Strathmore, the complaint did not include a count in negligence in behalf of original or subsequent purchasers.
In Navajo Circle, Inc. v. Development Concepts, 373 So.2d 689 (Fla. 2d DCA 1979), the court held that no privity is required to allege a cause of action for negligent performance of a contractual obligation. The court cited A.R. Moyer, Inc. v. Graham, 285 So.2d 397 (Fla. 1973) as authority for the principle that a party who may foreseeably be injured or sustain an economic loss proximately caused by the negligent performance of a contractual duty of an architect has a cause of action against such architect.
Parliament Towers Condominium v. Parliament House Realty, Inc., 377 So.2d 976 (Fla. 4th DCA 1979), approving Strathmore, supra, held no implied warranty is extended to remote purchasers. The court further held that no privity is required to maintain an action for negligence against an architect or builder of a condominium project, therefore secondary purchasers may recover damages which are reasonably foreseeable. See, also, Solomon v. Gentry, 388 So.2d 52 (Fla. 4th DCA 1980).

CONCLUSION

Implied Warranty
We decline appellees' invitation to extend an implied warranty in the sale of a new home to subsequent or remote purchasers. We hold that doctrine is applicable only to those who are in privity with the seller.[7] We adhere to Strathmore and Parliament, supra. We further agree with Strathmore that as to original purchasers, there exists an implied warranty of substantial compliance with plans and specifications approved by the governmental authority, of compliance with applicable building codes, and of fitness and merchantability. This does not mean that the developer must deliver a perfect house. But it does mean that major defects, as determined by the trier of fact, entitle the original buyer to damages to remedy or repair the defects.

Negligence
We hold that no privity of contract must exist in order for negligent performance of a contractual duty to give rise to liability for damage to an intangible economic interest. We reject the contention by appellant that there can be no recovery in negligence absent proof of personal injury or property damage. We hold that there can be recovery for economic loss. Why should a buyer have to wait for a personal tragedy to occur in order to recover damages to remedy or repair defects? In the final analysis, the cost to the developer for a resulting tragedy could be far greater than the cost of remedying the condition. We conclude that a cause of action for negligent construction exists in favor of both original and subsequent purchasers. Whether or not the developer exercised the requisite care, technical skill and ability are questions to be determined by the trier of fact.

Common Elements
We hold that as to common elements, the appellees may recover the entire *520 damages on either theory, albeit the subsequent or remote purchasers will benefit thereby. To conclude otherwise and apportion the damages would penalize the original purchasers. In order for appellees to receive the benefit of their bargain and be made whole, the amount of damages awarded must equal the sum necessary to correct the condition.
We now consider the disputed items of damages awarded sub judice in the light of the foregoing principles.

The Decorative Aluminum Fencing
There is no evidence of negligent construction. Ergo, appellees cannot recover damages on a theory of negligence. Original purchasers, however, can recover damages for breach of an implied warranty to construct the building in accordance with the plans and specifications on file with the governmental authority. As previously shown, this warranty does not extend to subsequent purchasers. The trial judge awarded appellees the entire damages for this omission. We, nevertheless, approve the sum awarded because it concerns common elements.

The Ceiling Roof Assembly
We approve the sum awarded on the theory of negligence both as to original and subsequent purchasers. We also approve the award based on implied warranty as to original purchasers. Furthermore, it was appropriate to award entire damages on implied warranty because it concerns common elements.

The Aluminum Awning Windows
This does not concern common elements. Entire damages were nevertheless awarded appellees. We approve the sum awarded to original purchasers on implied warranty and negligence and to subsequent purchasers on negligence.
We are aware there exists no unanimity of opinion in other jurisdictions concerning the foregoing principles.[8] We believe the approach we have taken will discourage shoddy work and the fly-by-night operator while encouraging truth in building. The ordinary home buyer does not have the technical skills to discover construction defects and relies upon the skill and experience of the developer or builder. The importance to a buyer of the purchase of a new home is self-evident. The developer may build a house but the purchaser buys a home. "East is East and West is West and never the twain shall meet."[9] This "proud householder, who plans to live out his days in the home of his dreams", as thoughtfully expressed by Judge Letts in Gory, supra, deserves the focus of the law and its concern.
AFFIRMED.
LETTS, C.J., and ANSTEAD, J., concur.
NOTES
[1] South Florida Building Code, Section 302.1(a) (Broward Ed. 1972) provides: "in the event of a change in any material fact given in the attested application which served as a basis for issuing the permit, the permit holder shall immediately file an amended attested application detailing such changed condition."
[2] Sections 2001.2(a) and 2006.2 (Broward Ed. 1972).
[3] Section 3122.2 (Broward Ed. 1972) provides: "Doors and Windows: (a)(1) Sleeping rooms of Group H and I occupancy, unless having two doors providing separate ways of escape, or having a door leading outside of the building directly, shall have at least one outside window which can be opened from the inside without the use of tools to provide a clear opening of not less than 22 inch minimum dimension and five square feet in area, inside the perimeter frame, with the bottom of the opening not more than four feet above the floor."
[4] None of the parties suggest, and correctly so, that Florida Statutes 553.84 (1979) and 718.203 (1979) are applicable to this litigation. We need not decide what effect these statutes may have on future, similar litigation and our decision today.
[5] Page 486, footnote 5.
[6] In Slavin the plaintiff was injured when a washbasin, not securely fastened, fell on him. Held: contractor liable in negligence to third person for latent defects not discoverable or discovered by owner even after acceptance of work. In Geer plaintiff was injured in a fall due to the absence of a guard rail. Held: architect liable to anyone lawfully on premises for negligence based on defects in plans or supervising activities or both.
[7] See footnote 4.
[8] See, e.g., Mellander v. Kileen, 86 Ill. App.3d 213, 41 Ill.Dec. 639, 407 N.E.2d 1137 (Ill. App. 1980); Summerhouse Condominium Association v. Majestic Savings & Loan Association, 615 P.2d 71 (Colo. App. 1980); Terlinde v. Neely, 271 S.E.2d 768, (S.C. 1980); Morris v. Holt, 380 Mass. 133, 401 N.E.2d 851 (1980); Sands v. R.G. McKelvey Bldg. Co., 571 S.W.2d 726 (Mo. App. 1978); Crowder v. Vandendeale, 564 S.W.2d 879 (Mo. 1978); Tavares v. Horstman, 542 P.2d 1275 (Wyo. 1975); Barnes v. Mac Brown and Company, Inc., 264 Ind. 227, 342 N.E.2d 619 (1976). For excellent law review articles concerning the issues presented sub judice see Roberts, The Case of the Unwary Home Buyer: The Housing Merchant Did It, 52 Cornell L.Q. 835 (1967) and Young & Harper, Quare: Caveat Emptor or Caveat Venditor?, 24 Ark.L.Rev. 245 (1970).
[9] Rudyard Kipling, The Ballad of East and West (1889).