OPINION
HOWARD, Chief Judge.
Appellees, plaintiffs below, all bought houses constructed by appellant Power-craft Homes, Inc. in its Indian Hills development near Casa Grande, Arizona. Each of them discovered numerous defects in their houses. The most serious, shared by all the houses, was cracking in the exterior and interior walls. The appellees filed a complaint against Powercraft with the Arizona Registrar of Contractors. After conducting a hearing, the registrar found that Powercraft failed to meet the plans and specifications in several regards and did not properly compact the soil. Appellees also filed this suit against Powercraft and the Continental Insurance Company, Powercraft’s surety, alleging violation of Arizona’s Consumer Fraud Act, A.R.S. § 44-1521, et seq., and breach of the implied warranty that the houses would be habitable and constructed in a workmanlike manner. The jury verdict in appellees’ favor awarded them both compensatory and punitive damages.
The first question presented for review is whether appellees’ claim under the Consumer Fraud Act is barred by the statute of limitations. The applicable statute of limitations for such claims is one year. Murry v. Western American Mortgage Co., 124 Ariz. 387, 604 P.2d 651 (App.1979). But when did appellees’ cause of action accrue? Appellants contend that the statute began to run at the time of the sale of the houses. We need not decide whether a cause of action for statutory fraud accrues at a different time than common law fraud, however, because, as we shall show, even if we apply the rule as to when the statute of limitations for common law fraud begins to run, appellees failed to file their complaint within the one-year period required for statutory fraud.
Tovrea Land and Cattle Co. v. Linsenmeyer, 100 Ariz. 107, 412 P.2d 47 (1966), states the rule as to fraud actions:
“[T]he statute of limitations runs from the time the aggrieved party should have discovered the fraud in the exercise of reasonable care and diligence.” 100 Ariz. at 130, 412 P.2d 47.
The complaint in this action was filed on August 17, 1979. While appellees, in their testimony, could not always give precise dates for when they discovered that their houses were seriously defective, it is clear that they each had sufficient information more than a year before August 1979, from which a reasonable person would be put on notice that he might have a claim against the builder. The Woodwards had water pipes break three and nine weeks after they moved into their house in June 1977. The cracking started in the Schaar’s house six months after they moved in in September 1975. The Fillions also noticed defects in their house six months after moving in in April 1976. Samuel Farina testified that he started noticing deficiencies in his home in January 1978. Danny Richards testified *266 that he examined his house more than a year before August 1979, and found many deficiencies. Sharon White testified that the serious cracking on her house started right after or during the heavy rains in 1978, and Richard Fillion testified that the heavy rains were during the winter of 1977-78. Robert Grant first noticed the problems with his house within two months after the Grants moved in in 1976.
In addition to this testimony, there was also evidence that the problems with the houses were a cause of common concern and discussion among all the neighbors well before August 1978. Eventually all of the appellees filed a complaint with the Registrar of Contractors. The hearing on this complaint commenced on August 14, 1978, at which time appellees were represented by counsel.
Appellees argue that they did not discover the facts on which their claims of fraud are based until the hearing before the Registrar of Contractors. It was not necessary, however, for them to know all the facts for the statute of limitations to begin to run. All that is required is that they should have known such facts that would have prompted a reasonable person to investigate and discover the fraud.
In Polk Terrace, Inc. v. Curtis, 422 S.W.2d 603 (Tex.Civ.App.1967), the court applied the same rule to similar facts. There, the plaintiffs had observed bricks pulling loose and cracks in their masonry for several years before hiring an expert to investigate the cause of their problems. Plaintiffs argued the statute of limitations began to run when they obtained the expert’s opinion. The court, however, held that before then plaintiffs had had knowledge of such facts as would cause a reasonable person to make an inquiry that would have led to a discovery of the fraud.
Here, the fact that appellees filed a complaint with the Registrar of Contractors, indicating that they were well aware of defects in their houses and that they blamed Powercraft for them, plus the evidence of appellees as to the problems each had with his house were sufficient to start the running of the limitation period.
Because appellees’ consumer fraud claim is barred, leaving only their claim for breach of implied warranty, the award of punitive damages must be vacated. Punitive damages are generally not available for breach of contract. Fogleman v. Peruvian Associates, 127 Ariz. 504, 622 P.2d 63 (App.1980). As was stated in Rosell v. Silver Crest Enterprises, 7 Ariz.App. 137, 436 P.2d 915 (1968): “An implied [warranty] is as much a part of a contract as a written one____” 7 Ariz.App. at 139. Therefore, punitive damages are no more available for a breach of an implied warranty as they are for any other breach of contract.
Appellants contend that the trial court incorrectly applied the doctrine of collateral estoppel to the findings of the Registrar of Contractors. Most of their argument deals with the issues raised by the consumer fraud count and so need not be addressed. They also argue, however, that they were not allowed to properly defend themselves on the implied warranty count, specifically, that they were prevented from presenting evidence with respect to any warranty disclaimers. The record shows, however, that appellants questioned at least three of appellees, Lee Woodward, Samuel Farina, and Sharon White, about warranties. Neither the court nor appellees’ attorney did anything to restrict this questioning. Since appellants do not provide us with any examples where their defense on the implied warranty count was in fact impeded, we cannot find that they were prejudiced by the trial court’s use of the Registrar of Contractor’s findings.
Appellants also contend that the trial court erred in denying their motion for a directed verdict on the implied warranty count as to appellees Sharon White, Samuel Farina, and Millie Richards. These three bought their houses from Farmers Home Administration, which had repossessed them from their original owners. Thus, they were not in privity with Powercraft. We hold that there must be privity to main *267 tain an action for breach of the implied warranty of workmanship and habitability.
Columbia Western Corp. v. Vela, 122 Ariz. 28, 592 P.2d 1294 (App.1979), holds that a builder-vendor of new construction impliedly warrants that its construction is done in workmanlike manner and that the structure is habitable. In Vela, the Arizona court was following the trend away from the strict application of caveat emptor to realty sales. Several states have considered the related question of whether the warranty extends to owners who did not purchase their houses directly from the builder. Appellees cite cases from three states in support of their position that privity is not necessary; Duncan v. Schuster-Graham Homes, Inc., 194 Colo. 441, 578 P.2d 637 (1978); Barnes v. Mac Brown and Company, Inc., 264 Ind. 227, 342 N.E.2d 619 (1976); and Moxley v. Laramie Builders, Inc., 600 P.2d 733 (Wyo.1979). The holding in Duncan is limited, however, to the special facts there — the plaintiff purchased a house from the builder that had been repossessed from its original owners and that case is not apposite here. The majority of the states that have considered the question have gone the other way and, we believe, have adopted the sounder position. As the court in Insurance Company of North America v. Bonnie Built Homes, 64 Ohio St.2d 269, 18 Ohio Op.3d 458, 416 N.E.2d 623 (1980), stated:
“The duty of the builder-vendor to build a structure in a workmanlike manner is a duty arising out of the contract of sale and not out of a general duty owed to the public at large. [Citation omitted.] In the absence of privity the action must fail because there is no contractual basis upon which to determine the duty owed.
* % * * * *
A builder-vendor should not be required to act as an insurer for subsequent vendees.” 416 N.E.2d at 624-25.
See also, Coburn v. Lenox Homes, Inc., 173 Conn. 567, 378 A.2d 599 (1977); Strathmore Riverside Villas Condominium Association, Inc. v. Paver Development Corp., 369 So.2d 971 (Fla.App.1979); Kramp v. Showcase Builders, 97 Ill. App.3d 17, 52 Ill.Dec. 749, 422 N.E.2d 958 (1981); and Brown v. Elton Chalk, Inc., 358 So.2d 721 (Miss.1978).
Our decision is consistent with the holding in Flory v. Silvercrest Industries, Inc., 129 Ariz. 574, 633 P.2d 383 (1981), where the court refused to impose liability in the absence of privity for breach of implied warranties under the U.C.C. where the plaintiff suffered no personal injuries.
Appellants’ final contention is that all claims against the Continental Insurance Company were barred by A.R.S. § 32-1152, which sets a special limitation on actions on a contractor’s surety bond. At the time the bond was given A.R.S. § 32-1152(D) provided in pertinent part:
“No suit may be commenced on the bond or deposit after the expiration of one year following the commission of the act or delivery of goods or rendering of services on which the suit is based except that time for purposes of claims for fraud shall be measured as provided in § 12-543.”
(A.R.S. § 32-1152 was later amended to extend the limitation period to two years.) The question posed by this statute is whether it adopts the three-year limitation provided in A.R.S. § 12-543 for actions brought under the Consumer Fraud Act, or whether the longer period applies only to common law fraud.
When the language of a statute is ambiguous, we must look to its purpose and the legislative intent behind it. Employment Security Commission of Arizona v. Fish, 92 Ariz. 140, 375 P.2d 20 (1962). E.L. Farmer Construction Co., Inc. v. Hartford Accident & Indemnity Co., 114 Ariz. 210, 560 P.2d 65 (App.1976), states:
“The statutory bond requirement was intended to provide limited collateral security for the performance of the building contractor’s duties, [citations omitted.] A surety’s range of liability under A.R.S. § 32-1152 D is coextensive up to the principal amount of its bond with its *268 principal’s undertaking in a construction contract. It is clear, however, that the Legislature in providing a one year limitation, except for cases of fraud, intended a surety’s temporal exposure to be short.” 114 Ariz. at 212, 560 P.2d 65.
If we followed appellees’ position, then the surety’s exposure to liability would exceed the principal’s, who is protected by the one-year statute of limitations for consumer fraud. This is manifestly contrary to the legislative intent behind A.R.S. § 32-1152. Therefore, we hold that the one-year limitation under the former A.R.S. § 32-1152(D) applies to suits based on the Consumer Fraud Act.
In accordance with the above, we direct that the consumer fraud count be dismissed, the award of punitive damages be vacated, and that the verdicts in favor of appellees White, Farina and Richards and against appellant, The Continental Insurance Company, be set aside. The judgment in all other respects is affirmed.
HATHAWAY and BIRDSALL, JJ., concur.