656 So.2d 171 (1995)
E.I. DU PONT de NEMOURS & COMPANY; Vigoro Industries, Inc.; Terra International, Inc.; and Immokalee Farmers Supply, Inc., Appellants,
v.
FINKS FARMS, INC., Appellee.
No. 94-00174.
District Court of Appeal of Florida, Second District.
April 7, 1995.
Rehearing Denied June 14, 1995.
Arthur J. England, Jr., Charles M. Auslander, Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., and Wendy F. Lumish, Gary M. Pappas, and Clinton R. Losego, Popham, Haik, Schnobrich & Kaufman, Ltd., Miami, for appellants.
Michael D. Martin, Martin & Martin, P.A., Lakeland, and Kenneth K. Thompson, Naples, for appellee.
SCHOONOVER, Judge.
The appellants, E.I. Du Pont de Nemours & Company, Vigoro Industries, Inc., Terra International, Inc., and Immokalee Farmers Supply, Inc., challenge an amended final judgment entered in favor of the appellee, Finks Farms, Inc. We affirm.
This products liability action arose out of the appellee's use of Benlate, a fungicide, on its 1991 tomato crop. Benlate is manufactured by the appellant, E.I. Du Pont de *172 Nemours & Company, and sold by the remaining appellants.
In an effort to control disease in its tomato plants, the appellee sprayed the plants with Benlate. After the spraying, the plants developed a number of symptoms, including slow growth, stunting, small fruit, dull appearance, and reduced production. The appellee planted tomatoes in the same field the next two years and neither of those crops had those symptoms.
The appellee, contending that the use of Benlate caused its crops to be damaged during the 1991 growing season, filed a civil action seeking recovery from the appellants on the basis of negligence and strict liability. During the course of the jury trial, the appellee contended that there was either a manufacturing or design defect in Benlate and that the defect was the proximate cause of damage to its 1991 spring crop. The appellee argued that an accidental contamination of Benlate with Atrazine, a herbicide, occurred, and that herbicides which were designed to inhibit plant growth were not intended to be mixed with fungicides which were used to prevent certain plant diseases. The appellants, of course, defended on several grounds. At the conclusion of the trial, the jury returned a verdict in favor of the appellee in the amount of $1,000,000, but found that the appellee was fifty percent comparatively negligent. An amended final judgment was entered in the amount of $693,917.21. This amount represented damages of $500,000, prejudgment interest of $148,300, and costs of $45,617.21. The appellants filed a timely notice of appeal from the amended judgment.
The appellants have raised several points on appeal. Although we reject the appellants' position on all of the points that have been raised, we find that one of them requires discussion.
The appellants contend that the economic loss doctrine bars recovery of damages for the appellee's loss. As mentioned above, we disagree.
The economic loss rule prohibits tort recovery when a product damages itself, causing economic loss, but does not cause personal injury or damage to any property other than itself. Casa Clara Condominium Ass'n, Inc. v. Charley Toppino & Sons, Inc., 620 So.2d 1244 (Fla. 1993). See also Sandarac Ass'n, Inc. v. W.R. Frizzell Architects, Inc., 609 So.2d 1349 (Fla. 2d DCA 1992), rev. denied, 626 So.2d 207 (Fla. 1993). In this case, the product, Benlate, caused damage to the tomato crop, and the rule is not applicable.
In Casa Clara, the appellee supplied concrete which contained a high content of salt that caused the reinforcing steel inserted in the concrete to rust, which in turn, caused the concrete to crack and break off. The appellants (homeowners) owned condominium units and homes built with, and allegedly damaged by, the appellee's concrete. The homeowners alleged that the defective concrete damaged other property such as the steel reinforcing bars embedded in the concrete and the buildings themselves. The Florida Supreme Court disagreed on the basis that since the homeowners had bargained for the finished product, the homes or condominium units, and not the various components of those dwellings, the buildings and reinforcing bars did not constitute "other property." The court held that the economic loss rule applied and that the homeowners had no cause of action in tort because no person was injured and no other property was damaged. See also American Universal Ins. Group v. Gen. Motors Corp., 578 So.2d 451 (Fla. 1st DCA 1991) (replacement oil pump found to be an integral or component part of engine, therefore, damage to the engine caused by the pump was not damage to other property).
In contrast to the facts in Casa Clara and American Universal, the appellee in the instant case bargained for Benlate as a finished product, and the finished product, not just a component of it, damaged other property. The other property consisted of the tomato plants and/or the land upon which the Benlate was sprayed. See K. Darpinian & Sons, Inc. v. E.I. Du Pont de Nemours & Co., 902 F.2d 39 (9th Cir.1990) (in an unpublished memorandum pursuant to Ninth Circuit Rule 36-3, the Ninth Circuit found that appellant's claim for damage to his peach crop, caused *173 by the failure of Benlate to prevent brown rot, was a claim for property damage and therefore, recovery in tort was permissible).
The appellants' reliance on cases such as Florida Power & Light Co. v. Westinghouse Elec. Corp., 510 So.2d 899 (Fla. 1987), Monsanto Agric. Products Co. v. Edenfield, 426 So.2d 574 (Fla. 1st DCA 1982), and King v. Hilton-Davis, 855 F.2d 1047 (3d Cir.1988), cert. denied, 488 U.S. 1030, 109 S.Ct. 839, 102 L.Ed.2d 971 (1989), is misplaced.
First, in the Florida Power & Light Co. case, Westinghouse agreed to design, manufacture, and furnish two nuclear steam supply systems. In considering an action for damages because of leaks in six generators used in the system, the Florida Supreme Court held that contract principles for resolving the economic loss were more appropriate than tort principles. Unlike the instant case, there was no accompanying physical injury or property damage to other property.
Next, in Monsanto, a farmer purchased a herbicide for use in controlling weeds in his soybean crop. The product did not work, and the weeds stifled the plant growth. Our sister court held that the herbicide manufacturer was not liable in negligence because the damage to the farmer's crop was not directly caused by any defect in the herbicide, but was consequential damage caused by the product's "ineffectiveness." Here, the Benlate was not "ineffective" by failing to kill fungus, but instead was "defective" because it damaged the plants and, therefore, the economic loss rule does not apply.
Last, in King, a farmer purchased seed potatoes that had been treated with Fusarex (a sprout suppressant). The Fusarex caused the farmer's crop to fail and the farmer sought tort damages. The Third Circuit held that since the product injured only itself, tort liability was foreclosed. The plants in this case, unlike in the King case, were not purchased with Benlate previously sprayed on them, but instead the product purchased, Benlate, damaged the appellee's plants and/or land.
As stated in Casa Clara, contract principles are more appropriate than tort principles for recovering economic loss where there is no accompanying physical injury or property damage to other property. Where, however, as in the instant case, the finished product causes property damage to other property, the economic loss doctrine does not apply. The appellee, therefore, was properly allowed to recover its damages in tort.
Affirmed.
CAMPBELL, A.C.J., and QUINCE, J., concur.