668 So.2d 300 (1996)
JARMCO, INC., a Florida Corporation d/b/a Joe's Auto-Marine Supply, Appellant,
v.
POLYGARD, INC., a Florida Corporation, and MacLean Sinclair, Appellees.
No. 95-0427.
District Court of Appeal of Florida, Fourth District.
February 21, 1996.
*301 Jane Kreusler-Walsh of Jane Kreusler-Walsh, P.A., West Palm Beach, and David J. Chestnut of David J. Chestnut, P.A., Stuart, for appellant.
Enola T. Brown of Annis, Mitchell, Cockey, Edwards & Roehn, P.A., Tampa, for appellees.
FARMER, Judge.
As we did in TGI Development, Inc. v. CV Reit, Inc., 665 So.2d 366 (Fla. 4th DCA 1996), we conclude that the economic loss rule (ELR) does not bar a common law fraud in the inducement claim seeking to recover only economic losses. HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 661 So.2d 1221 (Fla. 3d DCA 1995); contra Woodson v. Martin, 663 So.2d 1327 (Fla. 2d DCA 1995) (common law fraud in the inducement claim seeking only economic losses is barred by economic loss rule.)[1] Consequently the trial court's summary judgment dismissing Jarmco's fraud in the inducement claim against Polygard is in error and is reversed.
*302 We address two additional issues. Jarmco also argues that its non-fraud claims are not barred by the ELR because the facts here involve an "other" property exception in Casa Clara Condo. Ass'n v. Charley Toppino & Sons, Inc., 620 So.2d 1244 (Fla.1993), and because a contractual exclusion of warranties provision is inconsistent with a limitation of remedies provision in the same contract. We do not agree.
The facts in this case begin with a suit by a boat builder for damages arising from defective resin sold by Jarmco [dealer] and used by the builder in the construction of a boat. Dealer has, in turn, filed a third party complaint against Polygard [distributor], who is the distributor of the resin, seeking indemnification and contribution on theories of fraud in the inducement (by falsely representing that the resin was suitable for boat builders even though Polygard knew that it was non-standard and off-specification resin unsuitable for that purpose), negligent misrepresentation, deceptive and unfair trade practices and negligence. The trial court granted a summary judgment in favor of the distributor on the negligence counts as well as the fraud count on the basis of the ELR in Casa Clara.
The supreme court granted review in Casa Clara to resolve conflicts among a number of cases, one of which was our own decision in Adobe Bldg. Centers, Inc. v. Reynolds, 403 So.2d 1033 (Fla. 4th DCA), rev. dismissed, 411 So.2d 380 (Fla.1981). Adobe concerned defective masonry cement used by the purchasers and others in privity with a purchaser in the construction of residences. Casa Clara concerned defective concrete sold by a distributor and used by the purchaser in the construction of residences. Except for the fact that those cases involved the sale of concrete or cement for use in the construction of residences, while this one involves the sale of resin for use in the construction of a boat, we are unable to find any meaningful differences among the three cases.
Casa Clara rejected the "other" property exception and explicitly disapproved Adobe. The court said:
"The homeowners also argue that Toppino's concrete damaged `other' property because the individual components and items of building material, not the homes themselves, are the products they purchased. We disagree. The character of a loss determines the appropriate remedies, and, to determine the character of a loss, one must look to the product purchased by the plaintiff, not the product sold by the defendant. King v. Hilton-Davis, 855 F.2d 1047 (3d Cir.1988). Generally, house buyers have little or no interest in how or where the individual components of a house are obtained. They are content to let the builder produce the finished product, i.e., a house. These homeowners bought finished productsdwellingsnot the individual components of those dwellings. They bargained for the finished products, not their various components. The concrete became an integral part of the finished product and, thus, did not injure `other' property."
620 So.2d at 1247.
It is suggested that, for purposes of an other property exception, Adobe is distinguishable from this case on the grounds that the aggrieved purchasers there bought stucco rather than masonry cement from the distributor. Dealer argues that it bought a finished product, resin, from distributor and sold it to a boat builder for use in the construction of the boat which is unusable as a boat because of the defective resin. The claimants in Adobe were the builders and plasterers, not the home buyers, who bought defective masonry cement from a distributor for use in their construction of a residence. When those builders and plasterers received complaints from their buyers of the homes for defective stucco, the builders/plasterers sued the distributor.
Adobe`s facts show that the only product purchased by the developers/plasterers was cement. The purchasers in turn used the cement to make an exterior building finish, called stucco. That stucco finish later turned out to be defective. In this case, the claimant is Dealer who was a retail seller of resin that it purchased from a distributor for resale to customers like the boat builder. The dealer then sold that resin to the boat builder who used it to make a finish on a boat which later turned out to be defective. It is thus *303 obvious that, for purposes of applying an other property exception, the facts in this case simply cannot be distinguished on any principled basis from those in Adobe.
The supreme court's disapproval of Adobe in Casa Clara was unequivocal. That obviously means that the court found the ELR fully applicable to bar a negligence claim by claimants in the circumstances shared by the purchasers-developers in Adobe and the home owners in Casa Clara. The question is whether the court would have applied the rule to the resin dealer in this case. We conclude that the court intended the rule to have broad application.
The essence of Casa Clara is that purchasers of defective products are limited by law to those damages that were or could have been provided by contract between the purchaser and his immediate seller. The ELR requires that party to make use of traditional contract remedies for redress. Correspondingly, it bars the use of tort remedies to make society as a whole pay for the failure of the purchaser to protect his own interests by bargaining for appropriate provisions in his own contract. The ELR does not apply to personal injury claims or to property damage claims for property unrelated and unconnected in any way to the product sold.
In other words, whether we are addressing the other property exception as regards the developers/plasterers in Adobe, or the homebuyers in Casa Clara, or the resin dealer in this case, the ELR bars suits against the seller of a defective product for economic damages. Because the rule was applied to the consumer purchasers, i.e. the home owners in Casa Clara, it surely applies to commercial contractual relationships, as here, between retailers and their distributors.[2]
It is suggested that E.I. Du Pont de Nemours & Co. v. Finks Farms Inc., 656 So.2d 171 (Fla. 2d DCA 1995), supports the resin dealer's claim against the distributor. That case involved a claim by a farmer who purchased a defective fungicide, Benlate, against the manufacturer, distributor, and seller of the product.[3] The court explained as follows:
"In an effort to control disease in its tomato plants, the appellee sprayed the plants with Benlate. After the spraying, the plants developed a number of symptoms, including slow growth, stunting, small fruit, dull appearance, and reduced production. The appellee planted tomatoes in the same field the next two years and neither of those crops had those symptoms."
656 So.2d at 172. In applying the ELR, however, the court reasoned that the contaminated fungicide was a finished product, "and the finished product, not just a component of it, damaged other property," consisting of "tomato plants and/or the land upon which the Benlate was sprayed." Id.
Yet that same analysis of the product purchased could quite as well have been made by the court in Casa Clara: the defective cement contaminated by salt damaged the steel support rods that it had been poured around, and therefore it could be said that the concrete damaged "other" property. But the court did not engage in that analysis. Its failure to do so suggests that the "other" property exception to the ELR must be limited to property that is unrelated and unconnected to the product sold and there is no privity between the owner of the property damaged and the distribution chain for the product causing the damage. We thus have grave doubts that the second district's decision is in harmony with Casa Clara.
*304 As the court in Casa Clara itself stated, the reasons for the ELR are found in differing policies underlying tort law and contract law. Strict liability in tort for the manufacturers and sellers of defective products, the court noted, is based on the necessity to protect society from physical harm caused by defective products and fix the responsibility where it will effectively decrease society's risk. The court said:
"The purpose of a duty in tort is to protect society's interest in being free from harm, * * * and the cost of protecting society from harm is borne by society in general. Contractual duties, on the other hand, come from society's interest in the performance of promises. * * * When only economic harm is involved, the question becomes `whether the consuming public as a whole should bear the cost of economic losses sustained by those who failed to bargain for adequate contract remedies.'
"We are urged to make an exception to the economic loss doctrine for homeowners. Buying a house is the largest investment many consumers ever make, * * * and homeowners are an appealing, sympathetic class. If a house causes economic disappointment by not meeting a purchaser's expectations, the resulting failure to receive the benefit of the bargain is a core concern of contract, not tort, law." [c.o.]
620 So.2d at 1246-47.
The fundamental basis of the ELR as applied in Florida by Casa Clara is not found in subtle distinctions among products purchased and the usages and roles of the product with other property it will come in contact with after the sale. In short, the other property exception argued by appellee in this case is not the central teaching of Casa Clara.[4] Rather, the holding is that, when the essential claim is by the purchaser of a product against the manufacturer, distributor or seller for non-personal injury damages arising from some purely economic wrong, Florida will not use its tort law to provide remedies to the purchasers of products that they, themselves, did not bargain for in their contracts of sale.
Applying that rationale to this retail seller of resin's negligence claim against its distributor, we conclude that it is limited to its contract remedies. If the Casa Clara court would not find an other property exception in that case, we are confident it would not find one in this dispute between these commercial parties in the chain of distribution either. As commercial parties, they are even more capable than ordinary house buyers to protect their own rights and liabilities in the sale/purchase of goods by appropriate contractual provisions. If the dealer had wanted to protect itself against a claim arising from defective resin, it was required to bargain for such protection in its contract of sale with the distributor. Hence we are unable to agree with the application of any "other" property exception in Casa Clara to the facts of this case.
Assuming for the sake of argument that we are wrong in our analysis of the other property exception and that the dealer's claim against the distributor survives the ELR,[5] we come to the contract between this seller and its distributor. The contract[6] contains the following provisions:

*305 "Buyer assumes all risk and liability for loss or damage resulting from the handling, use or application of the products and containers delivered hereunder. Buyer agrees to familiarize itself and keep informed (without reliance on Seller except as to the accuracy of specific safety information actually furnished by Seller) with any hazards to persons and/or property involved in handling and using such products and the containers in which such products are shipped. Buyer shall advise its employees, customers, independent contractors, and others who handle and use such products of any such hazards; Buyer shall take such action as is necessary to so advise its employees, customers and any other persons or firms who are foreseeably ultimate users of such third parties (except where Seller is proven to be solely negligent) including without limitation Buyer's employees and customers resulting from the use of the product delivered hereunder whether or not such products are used in combination with other articles or substances or are used in any manufacturing process."
* * * * * *
"In no event shall Seller be liable for special, indirect, punitive, speculative, or consequential damages. Buyer's inclusive remedy hereunder shall be reimbursement of the purchase price of the products delivered hereunder with respect to which any claim is made whether such claim is in respect to any product delivered or for nondelivery and whether or not based on negligence, breach of warranty or tort liability."
The clear import of the first paragraph is that the distributor shall not be liable for any defects in the resin sold. The clear import of the second paragraph is that even if the distributor could be found liable, the measure of damages is the cost of the goods sold. Yet dealer argues that the very clarity of these two paragraphs creates an uncertainty when they are placed side by side in one contract. In other words, it argues, a clear negation of liability is made unclear by a clear limitation on damages for the liability supposedly negated. We do not agree.
The effectiveness of a blanket elimination of liability in a contract is not called into question by narrowing, in the next breath, the range of damages allowable if liability should nevertheless be imposed. If it were, the ability of the parties to provide for contingencies in the event of the failure of another contract provision would be pointlessly prevented. Yet the fundamental mission of contract law is to allow parties to protect their bargain by contractual terms dealing with future uncertainties and possibilities. Indeed to contract at all is to contain the unknown. Reading ambiguities from clarity and contingency control is quite at odds with the traditional uses of contracts.
Finding nothing unclear in these provisions, we agree with the trial court's construction of the contract and affirm the summary judgment as to the non-fraud claims. As we stated earlier in this opinion, however, we reverse the judgment on the fraud claim and remand for further proceedings.
WARNER and PARIENTE, JJ., concur.
NOTES
[1] In TGI Development, we stated that we agree with the dissenting opinions of Judges Altenbernd and Lazzara in Woodson, and thus certified conflict with the majority's decision in that case. We make the same certification here.
[2] Casa Clara also disapproved two other decisions of this court, Latite Roofing Co. v. Urbanek, 528 So.2d 1381 (Fla. 4th DCA 1988); and Drexel Properties Inc. v. Bay Colony Club Condo. Inc., 406 So.2d 515 (Fla. 4th DCA 1981). Drexel is almost identical to Casa Clara in that homeowners were suing a contractor for defects in the home caused by the contractor's product. Latite involves the purchasers of a shopping center suing a contractor for defects in the contractor's product. In short, the ELR is applicable whether the claimant is a consumer or a commercial entity.
[3] The defect was described by the court: "[A]n accidental contamination of Benlate with Atrazine, a herbicide, occurred, and that herbicides which were designed to inhibit plant growth were not intended to be mixed with fungicides which were used to prevent certain plant diseases." 656 So.2d at 172.
[4] We disagree with the argument that the "key phrase" in Casa Clara is the illustration that to determine the character of the loss one must look at the product purchased by the plaintiff and not the product sold by the defendant. The key phrase is in the holding itself adopting the ELR and not in rejecting an asserted exception.
[5] We make this assumption in this case and proceed to the next issue because our decision is in obvious conflict with the second district's decision in Woodson v. Martin as to whether fraud in the inducement is an exception to the ELR. Thus the supreme court may take review of our decision in this case, and our disposition of the other property exception may very well be considered by that court. If so the court will have the benefit of our thinking on the alternative disposition of the contractual and negligence theories.
[6] The contract between the distributor and the seller is in an invoice provided by the distributor. The trial court's summary judgment in favor of the distributor concluded that the provisions from the invoice quoted in the text of this opinion barred the seller's claims other than fraud under ordinary contract law. As neither party has challenged the apparent finding that the invoice represented a contract between the parties, we accept that finding.