GRIFFIN, Chief Judge.
The issue in this appeal is whether it was error for the lower court to grant summary judgment in favor of the defendants based on the economic loss rule. We conclude that it was error and reverse.
Cozumel is a Florida limited partnership which was organized for the purpose of pursuing ownership of a certain apartment community located in Jacksonville, Florida, [“the Property”], then owned by the RTC. Cozumel entered into a contract to purchase the Property [“the Property Contract”], paid earnest money deposits to the RTC and proceeded with its “due diligence” investigation of the Property before closing.
Part of Cozumel’s due diligence investigation included a verification of the billing rates and deposit information for water and sewer service to the Property. Water and sewer service was provided by Southern States Utilities [“Southern”], an investor-owned water utility, pursuant to a Developer Agreement that had been entered into between Southern and the original developer of the Property. It is uncontroverted that Southern is the sole provider of water and sewer service to a service area in Duval County, Florida, where the property is located.
Cozumel, through its agent, Jacqueline Coscia of Cambridge Management Services, contacted Southern in August of 1992 and identified itself as a prospective purchaser of the Property. In response to Cozumel’s request, Southern provided Cozumel with billing rate and deposit information for the Property. Prior to this, Cozumel had obtained from the RTC the monthly water bill history for the Property and the information provided to Cozumel by the RTC matched the information provided by Southern. After verifying the budget, including the water billing rates and charges with Southern, Cozumel closed on the purchase of Property for approximately $5 million dollars.
Several months after the closing, Southern notified Cozumel that they had erroneously been underbilling the Property for water usage since the Property was built in 1985. When the Property was first developed, Southern installed one and one-half inch meters for the Property but Southern then apparently erroneously based its calculations on five-eighths inch meters.
Cozumel contends that bills for usage based on a larger meter size were substantially higher than bills for usage based on the smaller (and what Southern had represented as the correct) meter size. As a result of this mistake, Cozumel’s water usage bills approximately tripled. Since the Property is an apartment complex with tenants with preexisting leases, these unanticipated costs could not now be passed on to the tenants who lived there. As set forth in the affidavit filed in opposition to defendant’s Motion for Summary Judgment, if Southern had provided accurate information upon Cozumel’s inquiry in August 1992, Cozumel would have elected to either: (a) forfeit its earnest money deposit and terminate the Property Contract or; (b) terminate the Property Contract and pursue recovery of its deposit from the *592 RTC on an equitable basis, or (c) negotiate a revised purchase price with the RTC for the Property based on accurate information. Cozumel would not have closed on the Property at all, or in the alternative, would have paid the RTC substantially less for the Property, if it had received accurate billing information from Southern.
The mantra that “contract principles are more appropriate than tort principles for recovering economic loss without an accompanying physical injury or property damage,” lest “contract law drown in a sea of tort,” does not mean that there can never be a tort recovery for purely economic loss. If there ever was cause for the kind of confusion that appears to have been generated by the AFM Corporation v. Southern Bell Telephone and Telegraph Company, 515 So.2d 180 (Fla.1987) and Landrum v. Florida Power & Light Company, 505 So.2d 552 (Fla. 3d DCA), review denied, 513 So.2d 1061 (Fla.1987) cases, by now the supreme court has cleared much of this up in HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 685 So.2d 1238 (Fla.1996). And although HTP involved the tort of fraud, the high court was clear that any independent tort would satisfy the economic loss rule.
It appears from a review of the transcript of the summary judgment hearing, and from the text of the order on appeal, that the lower court found appellee’s reliance on cases such as Jarmco, Inc. v. Polygard, Inc., 668 So.2d 300 (Fla. 4th DCA), approved, 684 So.2d 732 (Fla.1996), to be persuasive. In that ease, a boat builder sued a dealer for damages arising out of the use of a defective resin sold by the dealer and used by the builder in the construction of a boat. The dealer, in turn, sued the distributor of the resin on several theories, including a negligent misrepresentation that the resin was suitable for the specific use. The distinction between the facts of Jarmco and the case before us, however, was plainly described by the fourth district court:
If the dealer had wanted to protect itself against a claim arising from defective resin, it was required to bargain for such protection in its contract of sale with the distributor.
Id. at 304. In other words, the nature of the relationship between the dealer and distributor was contractual, based upon a sale of goods. Any representation or misrepresentation concerning the goods being sold was incident to the contract for sale and could not constitute an independent tort. In this case, because the only existing contractual relationship at the time was between RTC and Cozumel, if Southern committed a tort, it was necessarily independent of any contractual relationship. Thus, the fact that Cozumel had a contract with RTC does not control whether Cozumel has a tort claim against Southern. Only if there were no independent tort and there was no personal injury or property damage, would no claim against Southern States exist.
The question in this ease thus becomes whether there can be liability in tort for Southern’s negligence in giving false information concerning the utility rate structure applicable to the property that Cozumel intended to purchase from the RTC. This, in turn, depends on whether section 552 of the Restatement (Second) of Torts provides an avenue of recovery where, as alleged here, Cozumel expressly explained to Southern the reason for its request that Southern confirm the rates and, implicitly, its intention to rely on the information given in deciding whether to purchase the property. In the recently decided case of Gilchrist Timber Co. v. ITT Rayonier, Inc., 696 So.2d 334 (1997), the supreme court expressly adopted section 552 and implicitly recognized the potential for liability for a purely economic loss under this theory. Although Section 552 has been discussed on appeal, it was not addressed below by the lower court and was not the basis of the motion for summary judgment. Whether Cozumel may have a recovery in tort based on section 552 requires further development below. The summary judgment based on the economic loss rule is reversed.
REVERSED and REMANDED.
COBB and ANTOON, JJ., concur.