108 So.2d 462 (1958)
Benjamin J. SLAVIN, Appellant,
v.
Sanford KAY, doing business as Carousel Apartment Motel, and McCann Plumbing Co., a Florida corporation, Appellees.
Supreme Court of Florida.
April 16, 1958.
On Rehearing January 21, 1959.
*463 Nichols, Gaither, Green, Frates & Beckham, William S. Frates and Sam Daniels, Miami, for appellant.
Blackwell, Walker & Gray, Miami, for Sanford Kay, doing business as Carousel Apartment Motel, appellee.
Rollo E. Karkeet, Miami, for McCann Plumbing Co., appellee.
THOMAS, Justice.
The appellant instituted an action against the appellees for damages said to have been sustained when a wash-basin in a room occupied by him in a motel became detached from the wall and knocked him to the floor.
The appellee, Sanford Kay, was lessee and proprietor of the motel and the appellee, McCann Plumbing Company, had installed the fixture. In brief, it was alleged that appellee-Kay had so negligently maintained the premises that although he knew, or should have known, that the fixture was unsecurely fastened to the wall, or was defective, he failed to remedy the condition or warn the appellant of a danger that was not ascertainable by the appellant.
It was charged that McCann Plumbing Company, the contractor that had installed the basin, failed to use reasonable care in doing so because the fixture was improperly attached to the wall, or it, or its accessories, were faulty.
Soon after the action was started the court granted the motion of appellee-McCann Plumbing Company to dismiss the complaint as to it and the action was reviewed here. This court affirmed the judgment but permitted the appellant to amend, and this was done. Slavin v. McCann Plumbing Co., Fla., 73 So.2d 902.
At the conclusion of the introduction of appellant's testimony in the eventual trial the court granted the motions of both appellees for a directed verdict.
The only point presented by the appellant in this appeal from the final judgment based on the directed verdict is the propriety of the holding that there was no evidence to support a verdict against either the operator of the motel or the plumbing contractor. We will first consider the responsibility of the latter.
In the opinion written when the matter formerly came here the court referred to the "well-settled rule" that contractors are not liable to third persons after their work is completed and accepted by the owner. The court observed that there were many exceptions to the rule, and that a class of these had been recognized in Breeding's Dania Drug Co. v. Runyan, 147 Fla. 123, 2 So.2d 376, and Carter v. Livesay Window Co., Fla., 73 So.2d 411. We have re-examined those cases, while bearing in mind the amendment made after our mandate issued, containing the charge that the plumbing company knew or should have known that "its failure to exercise reasonable care in the * * * installation created an inherently dangerous situation * * *." We conclude that the pivotal fact relevant to the rule that the court considered demonstrates that there is no occasion to make exception of this controversy. In the first case a repairman worked on the refrigerator system in a drug store. When, as a safety measure, he pulled the switch but half of the current of 220 volts was broken. He was injured by the remaining 110 volts. One company had done the wiring defectively, another company had installed the refrigeration equipment leaving it to be operated although knowing it was dangerous. The drug company was charged with negligence because it used the equipment without the inspection required by ordinance. So there was a succession of negligence from the electrician to the installer of the refrigerating equipment to the owner. All three were held to be joint tort-feasors. The important and significant factor was the dangerous *464 agency, electricity, with which all were dealing. In the opinion in this case, written on its first appearance here, there was reference to the "dangerous instrumentality doctrine contemplated in Breeding's Dania Drug Co. v. Runyan or Carter v. Livesay Window Company," supra, so the court obviously thought that an exception to the doctrine was also involved in the latter case because a 325-pound window frame had been left over the weekend in a temporary, precarious position even though it may have been accepted from the man who furnished it for permanent installation by the general contractor. The element common to these two cases was, then, the hazardous nature of the instrumentality which caused the damage.
There has been much development in the law on the subject as will be seen by referring to a comprehensive note in 13 A.L.R. 2d at page 191. But our examination of the authorities found there and other opinions to which we have been referred confirm us in the view that the rule and not the exception is apposite in the present case, principally because from the evidence produced, it is plain no such dangerous agency is here involved.
As we understand the facts with which we are dealing the appellee-plumbing company completed its job 13 months before appellant was injured. Howard McCann, president of McCann Plumbing Company had been in the plumbing business for 15 or 18 years. His men installed the plumbing in the motel and he personally inspected the work when it was finished. Evidently inspection of the newly constructed motel by Dade County Plumbing Inspection Department was required and obtained before the motel was made available to the public; and, as we understand the testimony, it was after the last inspection that the appellee-plumbing company was paid for its work.
We gather that this is a clear case for the application of the rule because the procedure followed emphasizes the reason for the rule, as it was stated in Curtin v. Somerset, 140 Pa. 70, 21 A. 244, 245, 12 L.R.A. 322, that a contractor who performs work does not own a duty to the whole world to insure against hidden defects, else the extent of his responsibility would be difficult to measure and a sensible man would hardly engage in the occupation under such conditions. The court added that it was "safer and wiser to confine such liabilities to the parties immediately concerned." This statement brings forward the corollary "that a contractor * * * is not liable to third parties who have no contractual relation with him for negligence in the construction * * *." Cooley on Torts, 4th Ed., Vol. 3, § 498. If we were to hold the plumbing company liable in this case then it could conceivably be responsible, even though its work had been inspected and accepted, to any guest occupying the premises any time in the future who claimed injury from its deficient workmanship, despite the absence of any privity whatever between that company and the claimant.
We turn now to the accountability of the other appellee. The appellant, himself a builder of parts, had occupied the unit in the motel for seven days and had, of course, frequently used the sink which eventually was his undoing. One with his experience after occupying the quarters continuously for a week was given an opportunity to discover any defects that would have been found by the operator of the motel had he made a periodic inspection of this as well as all the basins in all the other units of the motel, unless he took the plumbing installations apart and this he was certainly not required to do. Hickory House v. Brown, Fla., 77 So.2d 249.
That the lip, on the back of the basin, that fitted into a bracket on the wall came out seems certain. Why it did so is obscure. But it is not deducible by a preponderance of the evidence that because it did so the appellee-lessee negligently failed to maintain the place in such a safe condition that his guests would not be injured. To state it otherwise, the mere fact that the sink came *465 loose did not prove by a preponderance of the evidence the allegation in the complaint that although the appellee-operator "knew or should have known that the wash-basin was defectively secured or attached to the wall or had fallen in a state of disrepair he failed to remedy this defective condition or warn the [appellant] of the said inherently dangerous condition * * *," not to mention the following averment that this condition "in the exercise of reasonable and ordinary care under the circumstances was not discoverable by the [appellant]." (Italics supplied.)
Because of the rule we have discussed we are not convinced that the circuit judge committed error when he directed the verdict in favor of McCann Plumbing Company, and because of the failure to prove by a preponderance of the evidence the allegations in the complaint against Sanford Kay, we conclude that the directed verdict in favor of that appellee was free of error also.
Affirmed.
TERRELL, C.J., ROBERTS, J., and PARKS, Circuit Judge, concur.
DREW, J., dissents as to contractor, concurs as to owner.

On Rehearing Granted
DREW, Justice.
The appellant, a guest of Carousel Apartment Motel, appellee, sustained injury when a basin fell from the wall of the bathroom in the unit occupied by him. The other appellee, McCann Plumbing Company, had installed the fixture. Liability was sought to be imposed against it for negligence in improperly attaching same, and against the motel for failure to maintain the premises in safe condition.
Although the cause of the accident is not plain, evidence was presented from which it might be inferred that the fixture was mounted upon its supporting bracket in a precarious and improper manner, and that this dangerous condition was not apparent upon ordinary inspection. Verdict was directed for the defendant plumbing company[1] apparently for lack of a contractual relationship with the plaintiff.[2]
In the previous appeal in this cause,[3] upon the pleadings, two instances were noted in which this Court has recognized exceptions to the rule that "contractors * * * are not liable for injuries to third parties occurring after the contractor has completed the work and turned the project over to the owner or employer and it has been accepted by him.[4] The first decision in the footnote represents a clear exception to the ordinary rule by which all parties dealing with inherently dangerous elements are held jointly liable without regard to termination of contract or acceptance of the work.
*466 The Carter v. Livesay Window Co. case[5] may have been decided as an application of this so-called "dangerous instrumentality" exception to the rule above stated, but it cannot logically be so limited. The opinion states the principle that liability has been extended "to building contractors who create inherently dangerous conditions," and as a further predicate for the decision it referred with apparent approval to Section 385, Rest. Torts, A.L.I.
The provisions of the Restatement in this general area have not yet received the considered attention of the courts, but they do represent a decided trend contra to the doctrine by which liability of contractors or manufacturers, after surrender of the defective product or premises, was based solely on contractual privity.[6] The reason stated in support of the traditional rule is that there must be a present duty on the part of an alleged tortfeasor toward one claiming liability, and that there could be no such "present duty" if the premises were in the possession and control of another at the time of the injury. But the decisions denying liability on the part of a contractor were predicated in most cases on a finding that it was the intervening negligence of the owner in failing to correct the dangerous condition that proximately caused the injury. Thence came the rule that contractors were not liable for injuries to third persons occurring after the work was turned over to the owner. "By occupying and resuming possession of the work the owner deprives the contractor of all opportunity to rectify his wrong. Before accepting the work as being in full compliance with the terms of the contract, he is presumed to have made a reasonably careful inspection thereof, and to know of its defects, and if he takes it in the defective condition, he accepts the defects and the negligence that caused them as his own, and thereafter stands forth as their author. When he accepts work that is in a dangerous condition, the immediate duty devolves upon him to make it safe, and if he fails to perform this duty, and a third person is injured, it is his negligence that is the proximate cause of the injury. His liability may be incurred either from his substitution for the contractor or from his neglect to repair. Casey v. Wrought Iron Bridge Co., 1905, 114 Mo. App. 47, 89 S.W. 330."[7]
Plainly, however, the latter principle cannot apply where there is in fact no acceptance (Carter v. Livesay Window Co., note 4, supra), or where the dangerous condition is one which is not discoverable by inspection. This conclusion is supported by the cases in which the point has been expressly considered: "In the case of latent defects not discoverable and not in fact discovered, the contractor's original negligence remains the proximate cause of the plaintiff's injury and may render him liable to him although the injury has occurred after the acceptance of the work by the owner. Colbert v. Holland Furnace Co., 1928, 333 Ill. 78, 164 N.E. 162, 60 A.L.R. 353."[8] And such is the obvious implication in other instances where the contractor may, for other reasons, ultimately have been relieved of liability.[9]
The reasoning of the court in Curtin v. Somerset, supra,[10] that a contractor *467 does not owe a duty to the whole world to insure against hidden defects else the extent of his responsibility would be difficult to measure and a sensible man would hardly engage in the occupation under such conditions, contains a patent fallacy. It is hardly arguable that during the progress of the work contracted, and while the premises are under his control, a contractor has a "duty to the whole world" to exercise due care, and that, limited only by the doctrine of foreseeability and ordinary principles of tort law, he would be liable to any person for harm resulting from negligently created defects, hidden or otherwise. Logically, then, this liability is terminated, by acceptance of the owner, only so far as the acceptor is to assume responsibility. Otherwise the extent of the contractor's responsibility is precisely that of any other tortfeasor, and the hazards he faces are no greater or more discouraging.
No compelling, or for that matter, valid, reason can be advanced for enforcing the asserted public policy against liability on the part of such a contractor further than to relieve him of liability on account of dangerous conditions which an owner or intermediate party could discover and remedy. Where, as in the instant case, the owner cannot be held to have assumed the risk of a particular defect or danger, then there is no intervening fault to sever the causal relation between the contractor's negligence and the injury, and he should be answerable to the same extent as for any negligent act which involves an unreasonable risk to third parties.[11]
To hold otherwise would result necessarily in the anomaly of fault without liability and wrong without a remedy, contrary not only to our sense of justice but directly conflicting with the express mandate of the Florida Constitution, Declaration of Rights, Section 4, F.S.A., that "every person for any injury done him * * * shall have remedy * * *." The court in the case of Colbert v. Holland Furnace Co., supra [331 Ill. 78, 164 N.E. 164], concluded to the same effect that "the law is presumed to furnish a remedy for every wrong. The defective condition was hidden from ordinary observation and was a latent defect of which the owner, who accepted the work, would not be chargeable with knowledge." Whether the rationale by which a contractor is held liable in this situation is stated as an exception to the privity doctrine, or whether the rule that acceptance obliterates liability should in the first instance be regarded as an exception to ordinary negligence law which is not applicable to latent dangers, the end result manifestly accords with law and justice.
The judgment is reversed and remanded for further proceedings in accord with these views as to the appellee McCann Plumbing Company.
The judgment for the owner, however, is affirmed. The evidence as to the nature of the defect and opportunity for discovery dictate, upon the same rationale above delineated, this conclusion. Our decisions do not, however, indicate that we have the right to determine that a directed verdict in favor of a defendant is free of error because "of the failure [of the plaintiff] to prove by a preponderance of the evidence the allegations in the complaint."[12] One cannot determine in which direction the scales are inclined without also determining the credibility of the witnesses, their bias or prejudice and other matters concerning the weight to be given the spoken word or other evidence. These *468 are matters wholly within the province of the jury.[13]
Affirmed in part, reversed in part.
TERRELL, C.J., and ROBERTS, THORNAL and O'CONNELL, JJ., concur.
THOMAS, J., and PARKS, Circuit Judge, adhere to original opinion of Justice THOMAS.
NOTES
[1] The appellee motel owner moved through Mr. Powers, its attorney, for a directed verdict at the close of plaintiff's case on the grounds (1) failure to show actionable negligence directly and proximately causing injury, (2) failure to prove notice or knowledge of the alleged defect in the sink, (3) failure to prove any defect in the sink or wall bracket and (4) that it appeared the plaintiff was guilty of contributory negligence. The plumbing company made a motion at the same time for a directed verdict, "on the same grounds stated by Powers" although only one of such "grounds" could have been applicable. Contributory negligence was not pleaded by the plumbing company.
[2] The record shows substantial evidence and inferences therefrom on which a jury could have returned a verdict for plaintiff had they chosen to believe it. It is, therefore, assumed that the conjecture is justified.
[3] See Slavin v. McCann Plumbing Co., Fla., 73 So.2d 902.
[4] The cases quoted were Breeding's Dania Drug Co. v. Runyan, 147 Fla. 123, 2 So.2d 376; Carter v. Livesay Window Co., Fla., 73 So.2d 411, 413.
[5] Ibid.
[6] Cooley on Torts, 4th ed., Vol. 3, Sec. 498. Curtin v. Somerset, 140 Pa. 70, 21 A. 244, 12 L.R.A. 322.
[7] Annotation 13 A.L.R.2d, p. 207-8. Also see Prosser, Torts (2nd ed. 1955), Sec. 85, p. 519.
[8] Annotation 13 A.L.R.2d, supra, p. 209. See also Kramer v. Mills Lbr. Co., 8 Cir., 24 F.2d 313 60 A.L.R. 371.
[9] Wood v. Sloan, 20 N.M. 127, 148 P. 507, L.R.A. 1915E, 766; Miner v. McNamara, 81 Conn. 690, 72 A. 138, 21 L.R.A.,N.S., 477.
[10] In Foley v. Pittsburg-Des Moines Co., 363 Pa. 1, 68 A.2d 517, at pages 531, 532, the Supreme Court of Pennsylvania cast aside Curtin v. Somerset, quoted in the dissenting opinion in the instant case, as outmoded, saying:

"In Pennsylvania the earlier cases, Curtin v. Somerset [and others] adopted the then prevailing doctrine, but, if not actually overuled, they have at least been discarded as controlling authorities and all the more recent cases in this Commonwealth have followed the principles proclaimed in MacPherson v. Buick Motor Co. [217 N.Y. 382, 111 N.E. 1050, L.R.A. 1916F, 696] * * *."
[11] For example, compare Price v. Parks, 127 Fla. 744, 173 So. 903.
[12] This quotation from original opinion by THOMAS, J.
[13] See Caledonian Am. Ins. Co. of N.Y. v. Coe, Fla., 76 So.2d 272. F.S. Sec. 54.17, F.S.A. and the cases there cited.