PETERSON, Judge.
Ronald R. Hohn and Mary Hohn, his wife, appeal a partial final summary judgment entered in favor of Wagester, Walker and Thornton, Architects and Engineers (WWT). We affirm.
Ronald Hohn was injured at a lime plant operated by Dixie Lime and Stone Company (Dixie) in Sumter County. A malfunction in the coal fuel system resulted in an explosion of volatile pulverized coal dust that had escaped from ducts designed to feed the coal fuel into a kiln. The pulverized coal fuel system had been installed as an alternative system when the cost of the previous oil system increased dramatically.
WWT designed the system. Coal was delivered by rail to an underground retrieval system. A conveyor was then used to transport the unprocessed coal to a storage bin having a capacity of approximately 100 tons. The coal was further transported 600 to 700 feet by another conveyor to a smaller bin where it was fed into a pulver-izer. The coal was ground to the consistency of flour and blown by air pressure into seven smaller storage bins. Three of these storage bins were situated around one kiln and four around the other kiln. The coal dust was then fed from the bins and injected into the burning chambers of the kilns. The kilns were operated constantly so as to avoid damage to the ceramic material which would result from the expansion and contraction caused by variable temperatures. WWT placed the storage and feed system as close to the kiln as possible to minimize blockages that occurred if the coal dust did not flow freely. The fuel *1091 system did not work well from the time of its installation.
Dixie, aided by other defendants in this action, determined that a solution to one of the problems was to enlarge storage bin number seven. Dixie and other defendants modified storage bin number seven, but while reinstalling it, they discovered an error in measurement. This error resulted in the misalignment of a vent hole in the bin with a corresponding hole leading to the bag house system.[1] The misalignment was fixed with á “jerry-rigged” connection consisting of a flexible tubing attached by means of screw clamps such as are used to secure radiator hoses on an automobile. WWT did not participate in the modification or reinstallation of bin number seven.
Hohn’s injuries resulted from an unfortunate chain of events. First, a diverter valve malfunctioned which caused coal to be misconveyed to the enlarged and misaligned coal dust storage bin. The bin became packed, the flexible tubing disconnected, and coal dust escaped. The dust became dangerously oxygenated and floated in the air. A flame blew out of the kiln through bent or missing seals, ignited coal on the ground, and reached the now volatile coal dust, resulting in the explosion that injured Hohn. The coal dust bins were moved outside the kiln areas after the accident occurred.
Count VI of Hohn’s fourth amended complaint alleged that WWT’s design of the coal fuel system caused the explosion because its design placed the storage bins too close to the kiln area. In deposition, Hohn’s architectural and engineering expert so testified. WWT’s defenses were: (1) Any placement of the fuel system in dangerous proximity to the fire source was a patent defect that precluded recovery; (2) the negligent redesign or alteration of the bin was without its approval, design, or knowledge and constituted an intervening cause; (3) the record failed to establish that WWT’s actions constituted the proximate cause of Hohn’s injuries. The trial court apparently agreed with WWT, since its motion for summary judgment was granted. It is the final judgment favoring WWT from which the Hohns appeal.
In support of the judgment in its favor, WWT cites Slavin v. Lay, 108 So.2d 462 (Fla.1958). In Slavin, the supreme court held that a contractor is relieved from liability for injuries caused by a patent defect after control of the completed premises has been turned over to the owner. Easterday v. Masiello, 518 So.2d 260 (Fla.1988), extended this principle to architects and engineers. WWT argues that the danger posed by the close proximity of the storage bin to the fire was a patent defect ascertainable from the outset. As proof, WWT points out that Dixie’s employees told its management that there were potential problems with the design and that, as a result of this information, Dixie’s management discussed making changes to the system. Among the changes discussed by management was erecting a concrete wall between the bin and the kiln. The tubes carrying coal dust could be ducted through the wall, and the wall would serve as a barrier to the intense heat radiating from the kiln. WWT contends that the discussions and proposed design change establish that the danger was patent and that Dixie knew of the danger. The record, however, is not so clear on that point as WWT might wish.
In his deposition, Paul Proctor, a supervisor for Dixie, was asked, in response to his comment that he did not understand why the entire kiln system “did not go up in one big fireball”:
Q Is that because of the close proximity of the fuel to the flame?
A No, that’s because of the fact you have pulverized coal dust floating around, because it’s been flushing so bad, and any time you have got a flame temperature of 3,000 degrees and a kiln temperature of 2100 to 2200 degrees Fahrenheit, and you got pulverized coal and oxygenated air, you got a terrifically *1092 potential explosion problem, and why it didn’t blow, I have no idea.
Mr. Raiford, Hohn’s coworker, testified in response to a similar question that the “really big reason” he wanted to see the bins moved was not because of a safety problem — it was because of a vibration problem. He believed that one of the reasons the burners were flushing coal dust was “that the vibrator was causing the feeders to overfeed. It wasn’t a safety problem from my standpoint. I don’t see it being a safety problem. I wanted to isolate the vibrations from the feeder itself.” Thus, although discussions did take place about moving the coal dust bins, the testimony does not establish that Dixie considered moving the bins because they were dangerously close to the kiln.
WWT also argues that the redesign and faulty installation of enlarged storage bin number seven was the intervening cause of Hohn’s injuries. WWT argues that it should not be liable for Hohn’s injuries since the jerry-rigged, flexible tubing was the intervening cause of the explosion and that they neither had knowledge of nor had participated in this alteration of the fuel flow system. Hohn argues that his architect/engineer’s affidavit in opposition to the motion for summary judgment places the blame squarely on WWT when it recites that WWT was “negligent in placing the pulverized coal storage bins under the same shed as the kiln fire and that the proximity of the coal storage bins to the kiln was a causative factor in the explosion that burned ... Hohn.”
We agree with WWT that whether or not it was initially negligent in its design placement of bin number seven, such negligence, if any, was not the proximate cause of this accident. Department of Transportation v. Anglin, 502 So.2d 896 (Fla.1987); Kohler v. Medline Industries, 453 So.2d 908 (Fla. 4th DCA 1984); Matthews v. Williford, 318 So.2d 480 (Fla. 2d DCA 1975) (“The law is well settled in this state that a remote condition or conduct which furnishes only the occasion for someone else’s negligence is not a proximate cause of the result of the subsequent negligence.”). This district recently noted that the determination vel non of proximate cause as a matter of law is a policy decision “that the range of danger is too remote to be reasonably foreseeable.” Barati v. Aero Industries, 579 So.2d 176 (Fla. 5th DCA 1991). In Barati, an experienced mechanic was injured as he was attempting to repair a pulley mechanism. This court found that “because of the manner in which Barati attempted the repairs ... the design defect had but a tenuous relationship to Barati’s injuries.” Barati, at 177. Similarly in the instant case, because of the improvident manner in which the system was redesigned and built, to-wit: a misaligned enlarged bin with a jerry-rigged, flexible tubing attachment, any design defect in placing the bins too close to the kiln had but a tenuous relationship to Hohn’s injuries.
AFFIRMED.
COBB, J., concurs.
DAUKSCH, J., concurs in conclusion only.

. .The bag house system was used to relieve pressure from the compressed air that forced the coal dust from the pulverizer to bin number seven. It also served the purpose of containing the coal and minimizing air pollution.