670 So.2d 131 (1996)
William L. WHITE, as personal representative of the estate of William S. White, a deceased minor, Appellant,
v.
Loren Glenn WHIDDON, as trustee of Callahan Body & Paint, Inc., a dissolved Florida corporation, Appellee.
No. 94-2049.
District Court of Appeal of Florida, First District.
March 19, 1996.
*132 Gerald S. Bettman and Lisa Call, Jacksonville, for Appellant.
Robert E. O'Quinn, Jr. of Webb, O'Quinn & Murphree P.A., Jacksonville, for Appellee.

ON MOTION FOR REHEARING AND CLARIFICATION
PER CURIAM.
We grant appellee's motion for clarification, withdraw our opinion of October 5, 1995, and substitute the following revised opinion in its place. The motion for rehearing is denied.
In March, 1991, the plaintiff's 15-year-old son, who had been having serious emotional problems, was acting out in a violent, irrational, and dangerous manner, so his father and grandparents called the sheriff's department to transport the boy to the mental health facility where he had been treated previously. After the young man was handcuffed and placed in the back seat of a patrol car, the sheriff's deputy briefly walked back to the house to talk with the adults. Less than a minute after he did so, they heard a shot. The boy had slipped his handcuffed arms to the front of his body, reached through a two to four-and-a-half inch gap in the protective cage that separated the front and back seats of the patrol car, taken the deputy's shotgun from its unlocked position on the gun rack, and shot himself. He died shortly after.
Appellant sued the designer/manufacturer of the screen, the sheriff, and the appellee, in whose auto repair shop the screen was installed. Appellee is the only defendant involved in this appeal. Appellant alleged appellee was negligent in that it breached a duty to install the screen in a safe and suitable manner so it would function as intended, and that it failed to warn that the screen could not be installed in such a way that it would provide the intended protection.
The screen was installed at the appellee, Whiddon's, auto repair shop. The person who actually installed it was an off-duty sheriff's deputy, Hall. The sheriff's office paid Whiddon for the work, and for the striping and lettering also done at the repair shop, and Whiddon paid Hall, who installed the screens and also installed light bars on new patrol cars. Whiddon stated in deposition that he did not put the screens in, but paid Hall and then sent the invoice to the sheriff's office. He first said he had plenty of work and did not want to install the screens; Hall said if Whiddon would do the striping and lettering, he would install the screens and light bars, and that he needed the work. Whiddon also said he did not feel like it was his place to look over the work Hall performed.
Former sheriff Ellis said in deposition that the sheriff's office did not have the equipment to install the screens, and that Hall had worked for Whiddon on other cars in addition to the county cars. He said he never noticed the gaps before March 1991 and did not know a person could reach through; he trusted that the screens had been installed properly; they paid Whiddon for the job; and they were not informed the screens could not be installed properly. He also said the screens are intended to protect both the officer and the detainee, and that they had been called upon to transport the mentally ill in the past. He said given a mentally unstable person to be transported, it was likely that the sheriff's office would be called on as opposed to an ambulance.
John Bradley, a 22-year law enforcement veteran and former investigator, said in deposition that it was not uncommon for some *133 people to be able to slip their handcuffed hands to the front of their body, especially young, flexible people, and that the screen was not properly installed. In his opinion, if the screen had been installed properly, the shotgun would not have been accessible. He said most screens fit so that there is a gap of only about one-half inch so that an individual cannot reach around the screen.
In his affidavit, Bradley stated that it was reasonable and foreseeable for a person in law enforcement to be required to transport someone who requires immediate psychological assistance; that a secured detainee would want to obtain the weapon for many reasons; and it was reasonable for the officer to depend on the screen to prevent a detainee from reaching through. He also opined that the screen is for the welfare of the officer as well as the detainee. In his opinion, the screen was not installed properly, and did not serve its intended purpose as installed. Another expert, Gueterman, also said that it was foreseeable that some people would be able to slip their handcuffed hands to the front of their bodies, although he opined the screen is for the protection of the officer only. Gueterman also said if there is a gap large enough to fit an arm through, the screen would not serve its intended purpose.
In the motion for summary judgment, appellee relied on the following theories: (1) no duty because the screen is not intended to protect detainees from themselves and it was not foreseeable that the detainee would slip the handcuffs, reach around the screen, and obtain a weapon; (2) no proximate cause because the intervening events were not foreseeable, due to their highly unusual, extraordinary, bizarre nature; (3) the alleged defect was open and obvious when the screen was installed and the work accepted by the sheriff's department some six months before the incident occurred.
In granting final summary judgment for appellee, the court determined Whiddon had no duty and that there was no proximate cause. The court found that: "The installation of the cage was supervised by a representative of the Sheriff's Department, Johnny Hall, the work was done pursuant to the Sheriff's Department's instructions and the installation was approved and accepted by the Sheriff's Department."
Appellant contends the lower court erred in determining the installation was supervised by a representative of the sheriff's office, because Whiddon, not the sheriff's department, paid Hall for installing the cages, thus he was not acting as an employee of the sheriff's department. Further, appellant contends appellee's conduct created a broader foreseeable zone of risk and thus a duty existed.
Summary judgment is only appropriate when the movant has shown conclusively that no genuine issues of material fact remain; every inference is drawn in favor of the party against whom summary judgment is sought. See Washington v. Fleet Mortgage Corp., 631 So.2d 364 (Fla. 1st DCA 1994), citing Holl v. Talcott, 191 So.2d 40 (Fla.1966). "Particular caution should be employed when granting summary judgment in negligence actions." Lindsey v. Bill Arflin Bonding Agency, 645 So.2d 565 (Fla. 1st DCA 1994), citing Moore v. Morris, 475 So.2d 666 (Fla.1985). We reverse the summary judgment because we conclude that improper installation of the cage would create a broader foreseeable zone of risk, and that genuine issues of material fact remain with regard to the factual matters upon which the trial court based its decision.
Appellee argues that the summary judgment should be affirmed even if the reason given by the trial court was incorrect, because the ruling was correct for other reasons: the sheriff's department selected the divider, and it was installed as directed, thus there was a "contract specification defense"; the gap was patent and the sheriff's department had actual notice of it; the decedent was not within the zone of risk created by appellee's conduct, thus appellee had no duty; the suicide was an independent intervening cause; and it was a highly unusual and bizarre incident, for which appellee should not be held responsible.[1]
*134 Appellee argues that it owed no duty of care to detainees who were in the backseat of the sheriff's vehicle; they concede they may have owed a duty to the department, but not to the detainee. "Duty exists as a matter of law and is not a factual question for the jury to decide." McCain v. Florida Power Corp., 593 So.2d 500, 503 (Fla.1992). "The duty element of negligence focuses on whether the defendant's conduct foreseeably created a broader `zone of risk' that poses a general threat of harm to others." Id.
As to duty, the proper inquiry for the reviewing appellate court is whether the defendant's conduct created a foreseeable zone of risk, not whether the defendant could foresee the specific injury that actually occurred.
Kowkabany v. Home Depot, Inc., 606 So.2d 716 (Fla. 1st DCA 1992). We conclude the improper installation of a protective cage creates a broader foreseeable zone of risk posing a general threat of harm to others by giving the illusion of security of those whom the cage is designed to protect. Further, insofar as the cage is designed to protect detainees as well as officers, they are within the foreseeable zone of risk and the duty extends to them. See generally Pate v. Threlkel, 661 So.2d 278 (Fla.1995).
Appellee argues lack of proximate cause due to the existence of an independent intervening cause or causes. Based on the record before us, we cannot say conclusively that this case is so "highly unusual, extraordinary, [or] bizarre" as to be "beyond the scope of any fair assessment of a danger created by the defendant's negligence." See Kowkabany v. Home Depot, Inc., 606 So.2d 716 (Fla. 1st DCA 1992), citing Department of Transportation v. Anglin, 502 So.2d 896 (Fla.1987). Generally, "[t]he question of whether an intervening cause is foreseeable is for the trier of fact." See Schmelz v. Sheriff of Monroe County, 624 So.2d 298 (Fla. 3d DCA 1993) (summary judgment reversed where jail inmate attempted suicide and brain damage resulted); see also Guice v. Enfinger, 389 So.2d 270 (Fla. 1st DCA 1980).[2]
Appellee also contends summary judgment should be affirmed based on the patent defect or "Slavin" doctrine. See Slavin v. Kay, 108 So.2d 462 (Fla.1959). Under the Slavin doctrine, once the owner accepts a building contractor's project, "if the defect is either one about which the owner had actual knowledge or one about which the owner would have known had he or she made a reasonably careful inspection," then the contractor cannot be held liable to a third party for injuries resulting from the defect. See U.S. Lodging v. H.B. Daniel Construction Co., 617 So.2d 448 (Fla. 1st DCA 1993). Appellee further contends Hall was an agent for the sheriff's office and as such his actual knowledge of the gap should be imputed to the sheriff's office for purposes of applying the Slavin doctrine.
Our research indicates the Slavin doctrine applies to contractors, architects, and engineers in a limited factual context, for the most part involving building and road construction. *135 See, e.g., Ed Ricke & Sons, Inc. v. Green, 609 So.2d 504 (Fla.1992) (public housing project); Easterday v. Masiello, 518 So.2d 260 (Fla.1988) (jail facility); Edward M. Chadbourne, Inc. v. Vaughn, 491 So.2d 551 (Fla.1986) (road paving contractor); U.S. Lodging v. H.B. Daniel Construction Co., 617 So.2d 448 (Fla. 1st DCA 1993) (motel building contractor); Kendrick v. Middlesex Development Corp., 586 So.2d 436 (Fla. 1st DCA 1991) (resort building contractor); Kala Investments, Inc. v. Sklar, 538 So.2d 909 (Fla. 3d DCA 1989) (apartment building contractor). See also Florida Freight Terminals, Inc. v. Cabanas, 354 So.2d 1222 (Fla. 3d DCA 1978) (court declined to extend application of Slavin beyond limited factual context). We have located no case indicating that doctrine would apply in a case of alleged negligent installation of a product similar to the cage in the present case. We conclude that Slavin does not apply in the present context.
Finally, as to the "contract specification defense," for which appellee cites as authority Dorse v. Armstrong World Industries, Inc., 513 So.2d 1265 (Fla.1987), and Rawls v. Ziegler, 107 So.2d 601 (Fla.1958), the present record does not indicate that any specifications were provided to the installer, thus factual issues remain. Summary judgment is REVERSED and the case REMANDED for further consistent proceedings.
JOANOS and VAN NORTWICK, JJ., concur.
BOOTH, J., dissents in part and concurs in part.
BOOTH, J., dissenting in part and concurring in part.
I concur with the majority's holding that summary judgment was improper because there are genuine issues of material fact remaining. However, I respectfully dissent from the majority's view that, as a matter of law, the Slavin doctrine is inapplicable on these facts. See, e.g., Ed Ricke & Sons v. Green, 609 So.2d 504 (Fla.1992); Kovaleski v. Tallahassee Title Co., 363 So.2d 1156 (Fla. 1st DCA 1978), disapproved in part, First American Title Ins. Co. v. First Title Serv. Co., 457 So.2d 467 (Fla.1984). Further, the factual limitation applied by the majority is not one recognized by the Florida Supreme Court.
NOTES
[1] We have considered each of appellee's arguments that was presented to the trial court. See generally Agundo, Pineiro & Kates v. Harbert Construction, 476 So.2d 1311 (Fla 3d DCA 1985) (the "`right for the wrong reason' appellate maxim does not apply in summary judgment proceedings where the issue was never raised in the motion for summary judgment").
[2] Appellee contends that, as a matter of law, one cannot be liable for the suicide of another absent a custodial relationship, citing as authority Paddock v. Chacko, 522 So.2d 410 (Fla. 5th DCA 1988) review denied 553 So.2d 168 (Fla.1989). In Paddock, the court referred to a general rule that, absent a specific duty of care, there is no liability for the suicide of another. 522 So.2d at 416. The rationale for the general rule is that in general, suicide is an independent intervening force that is not foreseeable. See, e.g., 22 Am. Jur.2d "Death" § 52; 25A C.J.S. "Death" § 25.

The following is consistent with this rationale:
If the intervening cause is one which in ordinary human experience is reasonably to be anticipated, or one which the defendant has reason to anticipate under the circumstances, the defendant may be negligent, among other reasons, because of failing to guard against it; or the defendant may be negligent only for that reason.
Sogo v. Garcia's National Gun, Inc., 615 So.2d 184 (Fla. 3d DCA 1993), citing Prosser and Keeton on the Law of Torts § 44 (5th ed. 1984) (reversing summary judgment based on suicide as independent intervening cause). Applying this reasoning, we are unwilling to say under the present circumstances that, as a matter of law, the suicide was an independent intervening cause.