706 So.2d 322 (1997)
Jairo RINCON and Julia Rincon, his wife, Appellants,
v.
ABC CUTTING CONTRACTORS, INC., and Boulevard Motel Corp., Appellees.
No. 96-4251.
District Court of Appeal of Florida, Fourth District.
December 24, 1997.
Gregg A. Silverstein of Silverstein, Silverstein & Silverstein, P.A., North Miami Beach, for appellants.
Richard B. Adams, Jr., and Joel Lumer of Law Offices of Adams & Adams, Miami, for appellees.
GLICKSTEIN, Judge.
This is an appeal from a summary final judgment in favor of ABC Cutting Contractors, Inc. ("ABC"), a subcontractor working on the renovation of the Clarion Hotel in Hollywood, in a personal injury action brought by the employee of another subcontractor. We reverse and remand.
ABC was hired by the general contractor, Welbro Design & Construction, Inc., to cut openings in a twelve foot high concrete canopy at the front of the hotel, where skylights were to be placed. The contract between ABC and the general contractor provided that the general contractor would "barricade the work area as needed." ABC's work orders indicated it was not responsible for barricading the work area.
The final work order was dated October 31, 1995, and ABC wrote "Job Complete" thereon. However, there is nothing in the present record to establishby affidavit or depositionthat the general contractor had paid ABC or accepted ABC's work as completed by December 2, 1995, which is when the subject accident occurred.
Jairo Rincon worked for Leo's Painting, which was another subcontractor on the Clarion Hotel project. On December 2, 1995, Rincon was pressure cleaning the concrete canopy area when he stepped backwards into one of the openings that had been cut, and fell approximately twelve feet. Rincon brought this personal injury action. The trial court entered summary judgment in ABC's favor based on the conclusion that Slavin v. Kay, 108 So.2d 462 (Fla.1958), relieved *323 ABC of liability because its work had been accepted by the general contractor.
It is clear from the transcript of the hearing on the subject motion that the trial court was concerned with the lapse of thirty-two days between ABC's final work order and the accident. Jurors may well conclude this to be a practical acceptance of ABC's work. Moreover, for all we know, when this case is returned to the trial court, proof of payment, absence of complaints and acceptance prior to December 2, 1995, may be forthcoming to show acceptance of ABC's work. That, however, is not the present state of the record.
The dissent herein points out the critical issue; namely, whether there was a duty to plaintiff at the time of the accident. While the dissent concludes there was none, we conclude that the absence of such duty is not established by the record.
We cannot agree with our colleague, at this time, because it is uncontradicted by the depositions that the holes were a dangerous condition; that no one made any effort to cover or otherwise isolate the holes in the canopy; and that when ABC left the job, no representative of the general contractor approved the ABC final work order which said "Job Complete." Nothing in the dissent suggests our colleague perceives an absence of duty by ABC towards others on October 31, 1995. In our opinion, having created the dangerous condition, ABC could not contract away its obligation to others who were not a party to the contract between ABC and the general contractor. Although acceptance, whether formal or practical, would have relieved ABC of liability, that is precisely what this record fails to establish. What, then, on this record terminated the duty existing on October 31, 1995?
Slavin has historical interest in at least two respects. First, it evolved on rehearing from the Justice who was the sole dissenter in the original opinion. Second, a major thrust of the opinion is a lengthy quote from an early Missouri case;[1] and counsel for ABC, following oral argument, has now provided us an insight into the recent pronouncement of the "Show Me" state in Becker v. Setien, 904 S.W.2d 338 (Mo.Ct.App. 1995). Becker indicates that Missouri's "acceptance rule" is applicable to relieve a subcontractor of tort liability to third persons where the subcontractor's work was accepted by the general contractor or by the owner. Unfortunately, ABC's appellate counsel did not make the record before the trial court; and that is one of the major differences in the two cases.
In summation, given the expense, time and energy occasioned by seeking summary judgment without ABC having done what even Becker required, the system has been needlessly engaged. This case also serves as a reminder to trial judges who should insist at the summary judgment proceedings: "show me the affidavit."
PARIENTE, BARBARA J., Associate Judge, concurs in part and dissents in part with opinion.
KLEIN, J., dissents with opinion.
PARIENTE, BARBARA J., Associate Judge, concurring specially in part and dissenting in part.
I agree with Judge Glickstein that the summary judgment should be reversed because the record does not conclusively establish the absence of negligence or the absence of legal causation. As Judge Glickstein points out, it is uncontroverted that the holes were left by defendant in a dangerous condition.
The record presently supports the plaintiff's position that when the subcontractor left the project on October 31, 1995, its employees knew that there were no barricades guarding the previously-cut openings and that leaving those openings unguarded created a dangerous condition to other persons required to work on and around the concrete canopy. The subcontractor acknowledged that the openings should have been barricaded as soon as they were cut.
*324 The subcontract between the parties set forth that the general contractor would "barricade the work area as needed." However, the subcontract does not as a matter of law relieve the subcontractor of its common law responsibilities to foreseeable third parties who are not parties to the contract. The absence of a contractual duty to barricade does not equate with the absence of a common law duty to guard or at least to warn. However, the jury may consider the contractual obligations when evaluating whether the subcontractor acted reasonably when it left the job with the holes unbarricaded.[2]
There is no evidence in this record that the contractor was present when the subcontractor left the job. It should be for the jury to decide whether it was reasonable for the subcontractor to leave the job without barricading the holes, without warning of the dangerous condition or without making sure the holes were properly barricaded "as needed" by the contractor.
I disagree with Judge Klein regarding the legal significance of the subcontractor's lack of control over the premises on the date of the accident. The issue, in my opinion, is not whether the subcontractor had control of the premises on the day of the accident, but whether it left the premises in an unreasonably dangerous condition on October 31, 1995, the day it completed its work and left the project. Was it foreseeable to the subcontractor that, if the holes were left unguarded, another individual working on the job might fall and be seriously injured?
The fact that the accident occurred over thirty days later may be relevant to the issue of legal causation and foreseeability, but the passage of time does not, as a matter of law, establish the absence of negligence or the absence of legal causation. Generally, issues of proximate cause and foreseeability as related to proximate cause are fact questions for the jury, not resolved by summary judgment. See Springtree Properties, Inc. v. Hammond, 692 So.2d 164, 167 (Fla.1997).
There is no evidence in the record as to what occurred in this area in the interim after the contractor left the job, including why the general contractor failed to barricade the holes after they were cut or whether the holes remained unbarricaded continuously through the date of the accident. While it would appear that the general contractor was negligent, the record before us does not conclusively establish that, as a matter of law, the subcontractor's initial action in leaving the holes unguarded was not also a concurring legal cause of plaintiff's accident.
Juno Industries Inc. v. Heery Int'l, 646 So.2d 818 (Fla. 5th DCA 1994), one of the cases relied upon by Judge Klein in his dissent, involves entities who did not participate in creating the dangerous conditionthe owner, architect and engineer. Haynes v. Lloyd, 533 So.2d 944 (Fla. 5th DCA 1988), involved the issue of constructive notice. Regency Lake Apartments v. French, 590 So.2d 970, 974 (Fla. 1st DCA 1991), also cited by Judge Klein, states that "[i]n general, a cause of action for premises liability does not hinge on legal title or ownership, but rather on the failure of the party who is in actual possession or control to perform its legal duty."
I do not disagree with the general legal principle for which Judge Klein cites Haynes and Regency Lake, but question why the application of the principle to this case mandates summary judgment. No case, of which I am aware, requires that a defendant be in control of the premises on the day of the accident in order to be liable for negligence.
In this case, the subcontractor had control over its work until it left the job, and it can be argued that the subcontractor breached a duty of reasonable care to third parties when it left the job without taking steps to ensure that the holes were barricaded. The question is whether the subcontractor had the responsibility to do more before it left its job on October 31, 1995 and whether, assuming the subcontractor was negligent, its negligence was a legal cause of the accident.
While concurring in the reversal of the summary judgment, I disagree with Judge Glickstein that Slavin v. Kay, 108 So.2d 462 (Fla.1958), which involves an owner's acceptance of the work of a subcontractor or contractor, should be extended to situations *325 where the job is still ongoing and where there has been no acceptance of the job by the owner.
As to the applicability of Slavin, it would appear that over thirty-five years ago in Baader v. Looby, 126 So.2d 745 (Fla. 3d DCA 1961), the third district applied the Slavin rule to absolve a materialman of liability after the work had been turned over and "accepted" by the contractor. In doing so, the third district noted that while Florida still adhered to the general rule of non-liability, the "more modern view" holds "the contractor liable for foreseeable harm caused by negligence." Baader, 126 So.2d at 747. No case has squarely confronted whether Slavin is applicable to a contractor's acceptance of the subcontractor's work when the overall job is still in progress.
Rather than an unbending principle of law absolving the subcontractor of its liability to third parties, the issue of whether the contractor has accepted the subcontractor's work would be one more fact that may impact upon the issues of foreseeability and legal causation. See also Brady v. State Paving Corp., 693 So.2d 612, 614-15 (Fla. 4th DCA 1997) (Klein, J., concurring).
KLEIN, Judge, dissenting.
In my opinion this subcontractor, by virtue of its contract with the general contractor, had no control over the premises which would have enabled it to have prevented this accident. The subcontract was very specific as to who had the responsibility to do what. The subcontractor had the responsibility to cut seven holes in the canopy and to remove the debris which the sub created. The general contractor was to "provide layout of cut lines, removal of any roofing material and barricade the work area as needed." The contract price was $6,500.
This is a premises liability case, and as Judge Cowart observed in Haynes v. Lloyd, 533 So.2d 944, 946 (Fla. 5th DCA 1988):
The crux of the cause of action for premises liability is not legal title or ownership, but the failure of a person who is in actual possession and control (be it the owner, an agent, a lessee, a construction contractor, or other possessor with authority and control), to use due care to warn or to exclude, licensees and invitees from areas known to the possessor to be dangerous because of operations or activities or conditions. (emphasis supplied).
See also Juno Indus., Inc. v. Heery Int'l, 646 So.2d 818, 824 (Fla. 5th DCA 1994) (defendant in construction site accident entitled to summary judgment because it had "no authority to control ... safety procedures" used by the general contractor); Regency Lake Apartments v. French, 590 So.2d 970 (Fla. 1st DCA 1991) (premises liability hinges on "party who is in actual possession or control"); Vorndran v. Wright, 367 So.2d 1070, 1071 (Fla. 3d DCA 1979) (architect not liable for construction site accident because of "no control over the method of construction utilized").
This subcontractor was engaged to perform a small very specific function during the renovation of this hotel. Its duties were carefully spelled out by the party in control, the general contractor, who expressly provided in the contract that the general contractor would provide any needed barricading. These holes could not have been continuously barricaded from the time they were cut until the renovation of the hotel was complete, because sky lights were to be installed in them. Once the subcontractor had cut the holes, it had no right of control which would have authorized it to come back on the premises in order to take steps which may have prevented this accident.
A very similar factual situation was presented in Baader v. Looby, 126 So.2d 745 (Fla. 3d DCA 1961), in which the defendant, a manufacturer of roof trusses, had delivered a bundle of them to a construction site. At the end of the day, after all of the workmen had gone home, a child who lived across the street went over to play in the trusses, and they fell, injuring him. He sued both the builder and the roof truss company; however, the appellate court affirmed a summary judgment in favor of the roof truss company because the trusses had been delivered to and were under the control of the builder before the accident occurred. See also Mastrandrea *326 v. J. Mann, Inc., 128 So.2d 146 (Fla. 3d DCA 1961).
The facts in Bader and Mastrandrea were more favorable to the plaintiffs than the facts in this case, because the accidents in those cases happened on the same day that the materials were negligently stacked by the defendant. In the present case, the holes had been cut over thirty days before this accident. I would affirm the summary judgment on the ground that as a matter of law this subcontractor owed no duty to plaintiff at the time of the accident.
NOTES
[1] The Florida Supreme Court recently reiterated the quote from Casey v. Wrought Iron Bridge Co., 114 Mo.App. 47, 89 S.W. 330, 334 (1905), in Ed Ricke & Sons, Inc. v. Green, 609 So.2d 504 (Fla. 1992).
[2] The subcontractor may be able to seek indemnification or contribution from the contractor.