WALLIS, J.
Appellant, Cherry C. Villanueva (“Villa-nueva”), as personal representative of the estate of Jhurel P. Villanueva (“Decedent”) and on behalf of Decedent’s other survivors, appeals the trial court’s entry of summary judgment in favor of Appellee, Reynolds, Smith and Hills, Inc. (“RS & H”). The trial court erred by ruling that no genuine issue of material fact existed as to the use of RS & H’s design plans in the allegedly-negligent construction of a roadway expansion that contributed to Decedent’s death. The trial court also erred by ruling that RS & H’s liability was extinguished when a successor engineer employed by Osceola County (the “County”) signed a subsequent set of design plans. We decline to address whether RS & H’s liability was extinguished by the Slavin[1] doctrine because this issue was not properly cross-appealed and is, therefore, not properly before this court. We reverse.
The present case arose from a June 16, 2007 vehicle collision at a rural intersection that resulted in the death of Decedent. The accident scene is located entirely within the boundaries of a County project for the expansion of Hickory Tree Road (the “Project”). In April 1999, RS & H entered into an agreement with the County to perform engineering design services for the Project.
On April 18, 2000, RS & H submitted a set of plans, which contained the proposed design of the Project, to the County. The RS & H plans bore RS & H’s seal on every page and were signed by an RS & H professional engineer. The RS & H plans provided for a 55-mile-per-hour speed limit throughout the accident scene and for advance-warning signs along northbound Hickory Tree Road approaching the intersection.
The County determined that the plans required several unrelated modifications and decided to undertake the changes without input from RS & H. Preliminary surveying and construction, presumably utilizing the RS & H plans, began on the Project at some point before June 2002. On August 12, 2002, the County submitted a set of plans highly similar to the RS & H plans. The County’s plans bore the seal of their engineering department on every page and were signed by Raymond Stan-gle, a professional engineer employed by the County. The signed and sealed County plans made no mention of RS & H. The County plans altered several portions of the Project, including changes to the speed limit at the location of the collision. The County plans did not alter the placement of the advance-warning signs contained in the RS & H plans.
The record does not clearly indicate how much work had been completed on the Project prior to the County’s submission of the revised plans. Several payment applications and daily reports from the contractor that constructed the Project suggest road signs and pavement markings were installed between October and December 2002. During a 2011 deposition, Stangle testified briefly that he was unsure how much of the Project was completed prior to the submission of the County plans. However, he opined at length that it was unlikely any signs or pavement markings *203 were constructed prior to or during August 2002 because those improvements were typically among the final steps completed on a roadway construction project. Stangle also testified that he and the County’s engineering department completely recalculated and reworked all aspects of the RS & H plans prior to signing and sealing the County plans. A professional engineer employed by RS & H, along with an expert witness hired by Villanueva for this case, agreed with Stan-gle that the advance-warning signs were likely not installed prior to October 2002. However, Villanueva’s expert noted that the pay applications did not conclusively demonstrate a lack of completion but rather only that the contractor did not bill the County for any signage work prior to October 2002.
Villanueva filed a complaint against RS & H and the County, alleging negligent design of the Project based on the improper placement of advance-warning signs for the subject intersection. RS & H filed a motion for summary judgment on June 19, 2013, arguing three theories: (1) the plans designed by RS & H were not used for construction of the advance-warning signs; (2) the County assumed full liability for the Project by signing and sealing a subsequent set of plans; and (3) the County assumed full liability, under Slavin, for all patent defects in the Project by accepting the finished roadway.
On June 20, 2013, the trial court granted RS & H’s motion, ruling that Villanueva failed to provide any evidence that the advance-warning signs were constructed using the RS & H plans. The court found that the evidence of the altered speed limit signs, the payment applications and daily reports, and the weight of expert testimony supported a conclusion that the relevant portions of the Project were constructed using only the succeeding County plans and not the earlier RS & H plans. The trial court found that Villanueva’s case was entirely based on Stangle’s uncertainty — during his 2011 deposition — as to whether any work on the advance-warning signs was completed prior to the August 2002 adoption of the County plans. The trial court also ruled — under O.P. Corp. v. Lewis, 373 So.2d 929, 931 (Fla. 4th DCA 1979) — that the signing and sealing of the County plans fixed all responsibility for negligent design on the County, thereby relieving RS & H of liability to Villanueva. The court did not address Slavin in the summary judgment order.
“The standard of review governing a trial court’s ruling on a motion for summary judgment posing a pure question of law is de novo.” Major League Baseball v. Morsani, 790 So.2d 1071, 1074 (Fla. 2001). “A party moving for summary judgment must show conclusively the absence of any genuine issue of material fact and the court must draw every possible inference in favor of the nonmoving party.” Kitchen v. Ebonite Recreation Ctrs., Inc., 856 So.2d 1083, 1085 (Fla. 5th DCA 2003) (citing Bruckner v. City of Dania Beach, 823 So.2d 167, 170 (Fla. 4th DCA 2002)). “If the evidencé raises any issue of material fact, if it is conflicting, if it will permit different reasonable inferences, or if it tends to prove the issue, it should be submitted to the jury as a question of fact to be determined by it.” Id. (citing Bruckner, 823 So.2d at 170). The evidentiary requirement for summary judgment is “a difficult bar to reach for a moving party and is meant to be so.” Speedway Super-America, LLC v. Dupont, 933 So.2d 75, 78-79 (Fla. 5th DCA 2006) (“Florida has a long-standing policy favoring jury trials and determinations on the merits.”).
In this case, the trial court received and weighed conflicting circumstantial evidence. RS & H argues the docu *204 mentary evidence it submitted supports its position that the project was constructed using only the County’s plans. Villa-nueva’s opposition to the summary judgment highlights the testimony of Stangle, which established uncertainty concerning the portion of the project that was completed prior to the submission of the County plans. The trial court weighed this conflicting evidence and granted the summary judgment. However, case law is clear that a “trial court cannot weigh the evidence on a motion for summary judgment.” Lane v. Talloni, 626 So.2d 316, 317 n. 1 (Fla. 5th DCA 1993) (citing Jones v. Stoutenburgh, 91 So.2d 299, 302 (Fla.1956)); see also Hanson v. Liberty Mut. Fire Ins. Co., 792 So.2d 710, 711 (Fla. 5th DCA 2001) (“In this case, although the greater weight of the evidence favors the finding [in support of summary judgment], facts do exist that supports [the opposing party’s] assertion to the contrary and sum,-mary judgment was improper.”). The trial court erred by granting summary judgment based on the weight of the evidence. Stangle’s uncertainty, coupled with the inconclusive nature of the other evidence submitted by RS & H, does not decisively refute Villanueva’s allegation that some of the signage and pavement marking near the accident scene was constructed using the RS & H plans. Accordingly, we reverse the entry of summary judgment in favor of RS&H.
We also reverse the trial court’s ruling that a professional engineer may avoid liability for negligent design plans based solely on the signing and sealing of a subsequent set of design plans by a successor professional engineer.[2] O.P. Corp., the case on which the trial court based its ruling, provides:
The requirement that a registered engineer stand behind and be responsible for his structural plans and specifications is no idle precaution; most especially when dealing with a building some 12 stories high. The designer of such structures owes a duty of care not only to the owner of the property but to the public as well. The signing and sealing of such plans fixes the responsibility for assistance during construction and ultimate liability for negligent design.
373 So.2d at 931 (emphasis added). O.P. Corp. is. not applicable to the present situation. There, the design plans at issue bore the stamp of one engineering firm, but evidence showed that the plans were actually signed and submitted by a second engineering firm. Id. at 930. The fourth district stated only that the second engineering firm clearly violated the law against an engineer “signing his name to plans or specifications which were not prepared by him or under his supervision, direction or control.” Id. Neither O.P. Corp. nor any other case stands for the principle — argued by RS & H — that a successor engineer’s signing and sealing of design plans places full and exclusive responsibility for the plans on the successor engineer. The trial court erred by ruling that Stangle accepted ultimate liability for the Project when he signed and sealed the County plans. Accordingly, we reverse.
*205 Although RS & H argues that the Slavin doctrine extinguished RS & H’s liability when the County accepted the completed Project, RS & H did not raise the issue by cross-appeal. Cfi Szedlar v. Szedlar, 111 So.2d 1019, 1020 (Fla. 2d DCA 2000). The trial court did not address Slavin in the order granting summary judgment, and therefore, by implication, ruled in favor of Villanueva on the issue.[3] See Gulfstar, Inc. v. Advance Mortg. Corp., B76 So.2d 243, 245 (Fla. 3d DCA 1979). Under the circumstances of this case, we decline to treat RS & H’s answer brief as a notice of cross-appeal. See Mesa v. Bank of Miami, 525 So.2d 989, 990 (Fla. 3d DCA 1988). Accordingly, we do not reach the issue because RS & H filed no motion for rehearing or cross-appeal seeking a ruling on Slavin.
REVERSED and REMANDED with instructions.
SAWAYA and COHEN, JJ., concur.

. Slavin v. Kay, 108 So.2d 462 (Fla.1958).

. RS & H also argues that Florida Administrative Code Rule 61G15-27.001 places all professional and legal responsibility for a project on a successor engineer where the successor engineer signs and seals a set of design plans superseding an initial engineer’s plans. Rule 61G15 — as well as Chapter 471, Florida Statutes — discusses a successor engineer’s signing and sealing of plans only in the context of licensing and disciplinary proceedings. No statute or rule allows an original engineer to escape liability because a successor engineer signed and sealed a set of plans that altered and superseded the original engineer’s plans.

. During a hearing on an earlier motion for summary judgment filed by RS & H, the trial court specifically declined to rule on the issue of the Slavin preclusion and ruled that summary judgment was improper due to the existence of an unrelated question of fact.